[Civ. No. 37774. First Dist., Div. Two. Nov. 6, 1979.]

NEEL S. RICH, Plaintiff and Appellant, v.
CITY OF BENICIA et al., Defendants and Appellants.

COUNSEL

John R. Wolf for Plaintiff and Appellant.

Charles J. Williams for Defendants and Appellants.

OPINION

TAYLOR, P. J.—Neel S. Rich (Rich) sued the City of Benicia (Benicia) and several individual defendants to compel preparation of an environmental impact report. After the parties had resolved the environmental issues, by stipulation, early in the proceedings, the trial court, upon motion, awarded attorney fees to Rich on a "private attorney general" theory. Both Rich and Benicia appeal from the attorney-fee order. We affirm.

The record contains scant factual information as to the underlying controversy. From Rich's complaint it appears that an old house in Benicia, locally known as the "Crooks Mansion," had long been a single-family residence and was in an area zoned for such use. The house had fallen into disrepair. Certain developers acquired the house and proposed to convert it for commercial as well as multiple-residential purposes. The developers applied for a zoning change; their documentation showed that their proposal would substantially increase use of the Crooks Mansion property. Benicia's Environmental Impact Committee, ostensibly acting under the provisions of the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) and of its own CEQA guidelines (cf. Pub. Resources Code, § 21083), issued a "negative declaration" (cf. Pub. Resources Code, § 21080, subd. (c)) to the effect that the proposed development would have no significant effect on the environment, a finding which in legal effect would render an environmental impact report on the proposed development unnecessary (cf. Pub. Resources Code, § 21151).

Rich lived across the street from the Crooks Mansion. He appealed the negative declaration to the city council which unanimously affirmed it. Then Rich, represented by attorney John R. Wolf (Wolf), brought this action for mandamus and ancillary relief, alleging that the negative declaration "is arbitrary, capricious, illegal, invalid, and a prejudicial abuse of discretion" in several specified respects, most of them alleged to be violations of Benicia's own state-mandated CEQA guidelines. After preliminary proceedings, but before the trial court had ruled on Rich's applications for a writ of mandate and for a preliminary injunction, the parties entered into a stipulation that Benicia would prepare an environmental impact report in accordance with specified procedures, that the trial court would retain jurisdiction to decide any issues which might arise in the process, and that the issue of attorney fees for

Rich would be reserved. The record does not reflect whether the environmental impact report was ever prepared or adopted.

The stipulation was recited into the court record in April 1974; the attorney-fee order appealed from was made and entered in April 1975. In the course of the intervening year the parties submitted substantial documentation and participated in a series of hearings on the attorney-fee issue. The trial court first determined that Rich was entitled to attorney fees on a private attorney general theory, and then, after further proceedings, awarded Rich $5,130 for his attorney fees, allowing $30 per hour for 171 hours of Wolf's services.

On these appeals Benicia contends that, as a matter of law, Rich was not entitled to an award for attorney fees, and Rich contends, essentially factually, that the trial court did not award enough attorney fees. The order is appealable as a final determination on a collateral matter requiring payment of money (cf. *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 634, fn. 3 [150 Cal.Rptr. 461, 586 P.2d 942]; *Wisniewski* v. *Clary* (1975) 46 Cal.App.3d 499, 502 [120 Cal.Rptr. 176]; *Spence* v. *Omnibus Industries* (1975) 44 Cal.App.3d 970, 976 [119 Cal.Rptr. 171]; *Stockton* v. *Rattner* (1972) 22 Cal.App.3d 965, 968-969 [99 Cal.Rptr. 787]).

### Entitlement to Attorney Fees

As a general rule attorney-fee awards must be based either on a statute or on the agreement of the parties (Code Civ. Proc., § 1021). Over the years the courts have made exceptions to the general rule on the basis of equitable considerations applicable to particular cases (cf. *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 34 [141 Cal.Rptr. 315, 569 P.2d 1303] (hereafter *Serrano III*); *County of Inyo* v. *City of Los Angeles* (1978) 78 Cal.App.3d 82, 86-88 [144 Cal.Rptr. 71]). Rich contends that his attorney-fee award was justified by either of the two theories of recovery thus developed: the "substantial benefit" theory and the private attorney general theory.

■ The substantial benefit theory can be applied to any situation in which a number of persons have achieved a substantial benefit through the efforts of counsel for less than all of them, so long as the benefits are actual and concrete and have been conferred "...on the members of an ascertainable class, and where the court's jurisdiction over the

subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." (*Woodland Hills Residents Assn.* v. *City Council of Los Angeles* (1979) 23 Cal.3d 917, 944, 945-946 [154 Cal.Rptr. 503, 593 P.2d 200] (hereafter *Woodland Hills*); cf. *Serrano III*, 20 Cal.3d at pp. 40-42, fn. 10.) The theory is designed to avoid unjust enrichment of those recipients of the benefit who have not been obliged to retain counsel. Effectuation of a statutory policy, while it may be of significant value to the public, has been held not to be the kind of *actual* and *concrete* benefit to which the substantial benefit theory should be applied (*Woodland Hills*, 23 Cal.3d at pp. 945, 947-948; *Serrano III*, 20 Cal.3d at p. 42). In this action the benefit arguably conferred was, in essence, effectuation of a statutory policy: a heightening of Benicia's perception of its obligations under CEQA and its own CEQA guidelines. Under *Woodland Hills* and *Serrano III* this is not the kind of benefit to which the unjust-enrichment rationale, and thus the substantial benefit theory, should be applied.

■ The private attorney general theory is predicated upon achievement of benefits substantial from the viewpoint of the general public but too ephemeral from the standpoint of individual beneficiaries to warrant application of the substantial benefit theory. While the substantial benefit theory is based in concepts of unjust enrichment, the private attorney general theory seeks (without regard to material gain) to encourage vindication of strong public policies by private lawsuit. (*Woodland Hills*, 23 Cal.3d at pp. 924-925; *Serrano III*, 20 Cal.3d at pp. 42-48; *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 27 [112 Cal.Rptr. 786, 520 P.2d 10].) The private attorney general theory was made applicable, in California, to situations in which the vindicated policy is constitutionally based by *Serrano III*; at about the same time the Legislature enacted Code of Civil Procedure section 1021.5,[1] which provides "explicit statutory authorization for a 'private attorney general' attorney fee award without regard to whether the public policy vindicated rests upon Constitution or statute" (*Woodland*

---

[1]Code of Civil Procedure section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

*Hills*, 23 Cal.3d at p. 931). The new statute has been placed in context and thoroughly analyzed in *Woodland Hills*.

Writing before section 1021.5 was enacted and before either *Serrano III* or *Woodland Hills* was decided, the trial court nevertheless based its attorney-fee award squarely on the private attorney general theory, drawing criteria from a federal district court opinion in *La Raza Unida v. Volpe* (N.D.Cal. 1972) 57 F.R.D. 94, affirmed, *La Raza Unida of Southern Alameda County v. Volpe* (9th Cir. 1973) 488 F.2d 559, certiorari denied, 417 U.S. 968 [41 L.Ed.2d 1138, 94 S.Ct. 3171]. The *La Raza Unida* criteria which the trial court applied are closely similar to those now codified in section 1021.5; *Woodland Hills* suggests that the similarity is not coincidental and that the Legislature "drew heavily" on federal decisions such as *La Raza Unida*. We conclude that the trial court's award is of the type authorized by section 1021.5 and that the record before us, and the trial court's consideration of the evidence reflected therein, meet the standards enacted in section 1021.5 and explicated in *Woodland Hills*.

■ Benicia argues, initially, that section 1021.5 cannot apply to this action because the award was made some three years before the section was enacted. It is clear, however, that section 1021.5 will apply to any action in which an appeal was pending, if only as to the attorney-fee issues, as of the effective date of the section, January 1, 1978 (*Woodland Hills*, 23 Cal.3d at pp. 928-932; *Bruno v. Bell* (1979) 91 Cal.App.3d 776, 786 [154 Cal.Rptr. 435]; *Kievlan v. Dahlberg Electronics, Inc.* (1978) 78 Cal.App.3d 951, 959 [144 Cal.Rptr. 585]).

A harder question is whether we can effectively review a trial court's application of specific criteria which were not expressly imported into California law until nearly three years later. A case such as this could rationally be remanded to the trial court for reconsideration in light of the newly enacted statute, and indeed this approach has already been taken in private attorney general cases in which attorney fees had been *denied* on the ground they were not authorized by California law (*Woodland Hills*, 23 Cal.3d at pp. 948-949; *Kievlan v. Dahlberg Electronics, Inc., supra,* 78 Cal.App.3d at pp. 959-960). A similar procedure might have been appropriate in this case had we been persuaded that the trial court had proceeded in disregard of considerations made significant by section 1021.5 and that either the state of the record or the possibility that additional evidence might be adduced jus-

tified further proceedings. But in our view remand is not necessary in this case: The relevant record, developed in extensive documentation and multiple hearings over a period of many months, appears clear, complete, and in most respects uncontradicted, and the trial court, after manifestly careful consideration, expressly applied to the evidence before it standards closely similar to those ultimately codified in section 1021.5. We proceed to a review of the trial court's action.

We need not analyze section 1021.5's requirements that there be a motion for attorney fees and that there be a finding that "such fees should not in the interest of justice be paid out of the recovery, if any": There was a motion, and there was no material "recovery" (cf. *Woodland Hills*, 23 Cal.3d at p. 935).

It remains for us to determine, therefore, whether the record sufficiently shows that the trial court properly found, expressly or by necessary implication and upon an adequate showing, (1) that Rich was "a successful party" whose action "has resulted in the enforcement of an important right affecting the public interest," (2) that "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons," and (3) that "the necessity and financial burden of private enforcement are such as to make the award appropriate" (Code Civ. Proc., § 1021.5, subd. (b)). Section 1021.5's use of the phrase "may award attorneys' fees" suggests that the award itself is discretionary (cf. *In re Richard E.* (1978) 21 Cal.3d 349, 354 [146 Cal.Rptr. 604, 579 P.2d 495]), and *Woodland Hills* strongly suggests, further, that the court to which a section 1021.5 application is made will retain discretion as to the existence of the enumerated conditions as well (cf. *Woodland Hills*, 23 Cal.3d at pp. 935-943). We apply the well-established rules that an exercise of discretion "will not be disturbed on review unless abused," and that "to be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice." (*In re Richard E., supra,* 21 Cal.3d at p. 354.)

### 1. *Important right.*

Unquestionably environmental concerns in general and the statutory policy in favor of use of environmental impact reports in particular involve preeminently important public rights (cf. *Woodland Hills,* 23 Cal.3d at p. 936, fn. 11; Pub. Resources Code, §§ 21000-21003). But

the questions whether Rich was "a successful party" and whether his action "has resulted in the enforcement of" these important rights were more difficult. The lawsuit was, in effect, settled at an early stage: It never reached a determination whether, beneath a veneer of compliance, Benicia had in fact disregarded CEQA and its own guidelines. ■ Where the vindication element is in issue, "the trial court, utilizing its traditional equitable discretion (now codified in § 1021.5), must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory." (*Woodland Hills,* 23 Cal.3d at p. 938.) The trial court has clearly done so, concluding upon substantial evidence that Rich's lawsuit "results...in the CITY'S undertaking to perform its duty to prepare an environmental impact report" in "any case where there is considerable community interest and controversy...." We find no abuse of discretion.

### 2. *Significant benefit.*

*Woodland Hills* reads section 1021.5 to require that the trial court "determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Woodland Hills,* 23 Cal.3d at pp. 939-940.) Because this action was settled in terms particularized to the Crooks Mansion project and to Rich's participation in further planning activities, without purporting to lay down more generalized guidelines for Benicia's future CEQA compliance, the showing of these elements in this record is not strong. ■ Nevertheless, *Woodland Hills* clearly consigns the issue to the trial court's discretion, and we are satisfied that the trial court has exercised its discretion, finding (again upon an adequate record) that Rich's action "effectuates a strong State policy to require a careful scrutiny of potential results before permitting the execution of projects that may significantly affect the environment" and, more specifically, that "[i]t may be inferred that the first attitudes of the City officials were engendered by uncertainty as to what was expected of them under the California Environmental Quality Act. Now that that problem has been explored, a different attitude may well prevail."

The trial court has adequately determined that Rich's action conferred a significant benefit upon a class—the residents of Benicia—of the requisite scope.

3. *Necessity and financial burden of private enforcement.*

CEQA itself plainly contemplates the kind of private enforcement action Rich undertook (cf. Pub. Resources Code, §§ 21167-21168.7); there appear to be no provisions for public enforcement of CEQA or of its guidelines. *Woodland Hills* points out that under section 1021.5 it should also appear that "'...the cost of the claimant's legal victory transcends his personal interest,...'" (23 Cal.3d at p. 941, quoting *County of Inyo* v. *City of Los Angeles, supra,* 78 Cal.App.3d 82, 89), and this element is by no means as clearly demonstrated by the record before us. But the trial court clearly perceived a need to overcome "a major obstacle, the expense of hiring legal counsel," in order to encourage private enforcement by suits of this kind in the public interest. We find the trial court's conclusion to have been within the scope of its discretion.

We do not mean by this opinion to imply that every lawsuit ostensibly based in a legislative policy, no matter how narrowly focused and no matter how resolved, will necessarily support an award of attorney fees upon the private attorney general theory: *Woodland Hills* makes clear that this is not the law (cf. 23 Cal.3d at pp. 935, 938, 939-940). We hold no more than that upon this record, under applicable standards of appellate review, the trial court did not abuse its discretion.

### Amount of Attorney Fees

Rich suggests that the trial court's assignment of an hourly rate of $30 is "penurious." In essence he challenges the sufficiency of the evidence to support the $30 figure. We have carefully reviewed the record and have carefully reviewed the factors to be considered by trial courts in awarding fees in public interest lawsuits, as enumerated in *Serrano III* and recently reviewed in *Mandel* v. *Lackner* (1979) 92 Cal.App.3d 747, 758 [155 Cal.Rptr. 269], which held the *Serrano III* formulation to be retroactively applicable (92 Cal.App.3d at pp. 756-757). We are satisfied that the trial court made an even more careful review of the evidence, and its memorandum recites a comparable list of factors. As required by *Serrano III,* the trial court expressly found both the amount of time spent and the value to be assigned to each unit of time spent. We consider it unnecessary to recite the relevant evidence of record: There is substantial evidence to support the trial court's $30 evaluation.

No one could question Wolf's expertise in environmental matters or his good faith. ▮ But it is well to bear in mind the dispositive rule that "[t]he 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'" (*Serrano III,* 20 Cal.3d at p. 49.)

Benicia argues that the trial court was limited by the fee agreement between Rich and Wolf. So far as we can determine from the record, the only agreement which can be inferred is that compensation would be set depending upon developments in the litigation. If enforceable such an agreement certainly would not limit Rich's recovery. But in any event the policy underlying the private attorney general theory would not be served by the rule Benicia suggests (cf. *Serrano III,* 20 Cal.3d at pp. 47-48).

The order appealed from is affirmed. Each party shall bear his or its own costs on appeal, however, Rich is entitled to his attorney's fees on appeal and the trial court is directed to determine the amount.

Rouse, J., and Miller, J., concurred.

A petition for a rehearing was denied January 4, 1980. On December 6, 1979, the judgment was modified to read as printed above.