[Nos. A021794, A025660. First Dist., Div. One. April 17, 1985.]

ROGER GRIMSLEY, Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF SAN BENITO COUNTY et al.,
Defendants and Respondents.

**COUNSEL**

Bruce Tichinin and Tichinin & Mitchell for Plaintiff and Appellant.

Rusconi, Jack, Foster & Thomas, Ernest Rusconi, David E. Pipal and Harry J. Damkar, District Attorney, for Defendants and Respondents.

**OPINION**

**ELKINGTON, J.**—Plaintiff Roger Grimsley appeals from two successive orders denying him attorney fees under Code of Civil Procedure section 1021.5, following judgment in his action against the above-captioned defendant agencies and officials of the County of San Benito "for alternative writ of prohibition and mandate and for injunctive relief re inadequate county general plan and open-space plan."

The material factual-procedural context of the appeals follows.

In *Starbird* v. *San Benito County* (1981) 122 Cal.App.3d 657 [176 Cal.Rptr. 149], we found serious shortcomings in the county's "general

plan in light of the requirements of Government Code sections 65300-65360 and CEQA." We in effect directed the county to remedy such shortcomings, and we held plaintiff Starbird to be entitled to attorney fees under the "private attorney general" concept according to Code of Civil Procedure section 1021.5. We nevertheless perceived "a purpose of the County to promptly amend or reorganize its general plan under the changed law, now codified as Government Code sections 65300.7, 65301.5, 65302.1 and 65302.6 . . . ." (*Id.*, at p. 664.)

San Benito County thereafter took steps to appropriately revise its general plan, and its planning commission prepared such a revised general plan.

A copy of the revised general plan was then delivered to the state's Director of State Planning and Research at Sacramento (hereafter Director), whose duty it was to:

"*Develop long-range policies to assist the* state and *local agencies in meeting the problems presented by the growth and development of urban areas* and defining the complementary roles of the state, cities, *counties,* school districts, and special districts with respect to such growth. . . .

"Encourage the formation and proper functioning of, and provide planning assistance to, city, *county,* district, and regional *planning agencies.*" (Gov. Code, § 65040, subds. (k) and (*l*); our italics.)

The Director thereupon reviewed San Benito County's proposed revised general plan. During the course of his review the Director reported to the county as follows:

"Congratulations on preparing revisions to San Benito County's general plan. The County's progress toward completing its general plan has been admirable. All of the effort expended by the citizens, community groups, planning commissioners, staff, and county supervisors, who participated in shaping the plan is worthy of recognition. [Office of Planning and Research's] purpose in reviewing your draft plan is to help the County adopt an adequate and legally defensible general plan. *We will go through two reviews; this is the first* [italics added]. The next review will be after your Board of Supervisors adopts the final plan, and will consider any changes or new information. . . . The draft plan has many strong points and it would take much longer to describe the plan's strengths than it would its drawbacks. My review concentrates on only those aspects of the draft plan which need changes to make them legally adequate. . . .

"Because the draft plan lacks an adequate general description of population growth and the local economy, it is impossible to tell why the plan

designates land for each use, particularly rural residential use. The draft plan neither quantifies how much land has been designated for which uses, nor does it justify why so much land is marked for conversion to rural development. In revising the draft plan, the County must quantify the amount of land in each major land use designation, demonstrate the relationship between these amounts and the expected demands, and then reconsider the designations for rural residential use. If the projections of demand cannot be justified, the County should change the designations back to rangeland, productive agriculture, or some other use."

During the course of the county's further study and modification of the general plan and attending discussions with the Director, the instant action was commenced. By it plaintiff Grimsley, a citizen taxpayer "beneficially interested in the relief sought," but a stranger to the original *Starbird* v. *County of San Benito* action, complained, among other things, that "it [the revised general plan] had not been properly adopted." He also alleged that the shortcomings in its adoption were the failure to refer "the modifications back to the [Planning] Commission for a report from that body, as required by *Gov. Code* §65356, and that neither a resolution showing approval of these elements by the Commission, nor an endorsement on the text of the elements showing approval by the Commission had been made as required by §65352 and §65353," i.e., by "resolution."

Many of the matters concerning which relief was sought by Grimsley, were already under consideration by the Director and apparently by San Benito County, when the action was filed.

Following a hearing in plaintiff Grimsley's action, the superior court found, among other things: "that the procedure for adoption of a general plan set forth in Government Code . . . was not followed by respondents in adopting the general plan . . ., and that the County of San Benito, therefore, has no general plan. The court further finds that, absent the general plan, the County has no authority to approve applications for land use which are prohibited from being approved in the Amended Alternative Writ of Prohibition and Mandate heretofore issued."

Judgment was thereupon entered that: ". . . A Peremptory Writ of Mandate issue commanding respondents Planning Commission of the County of San Benito and Board of Supervisors of the County of San Benito to adopt the general plan for the County of San Benito in accordance with the judgment of this court. . . ." And the fault in adoption of the general plan, according to the judgment, was the failure to follow the provisions of "*Government Code* section 65356 and *Government Code* section 65356.1."

Following entry of the judgment, and issuance of its subject writ of mandate, plaintiff Grimsley moved for attorney fees under the "private attorney general" provisions of Code of Civil Procedure section 1021.5, which, as relevant, states:

"Upon motion, a court *may* award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. . . ." (Italics added.)

In denying plaintiff Grimsley's motion the trial court stated that: "[J]udgment in favor of plaintiff was on the narrowest grounds of the numerous grounds alleged by plaintiff. These grounds were essentially procedural defects in the adoption by the County of San Benito of a general plan. The ruling resulted in a finding that because of the flawed procedure, no general plan was adopted. No findings were made as to the substantive issues in the petition relating to the specific contents of the general plan. The court therefore finds that plaintiff's success did not result in the enforcement of an important public right but alerted the Board of Supervisors to a procedural necessity in the adoption of an important public document." (The "flawed procedure" found by the court was the failure to approve its revised general plan as required by the Government Code.)

The court then ordered: "Therefore, under the discretion conferred on the court by CCP 1021.5 and the cases interpreting that statute, the requested award of attorney fees is hereby denied."

Plaintiff Grimsley's first appeal (A021794) is from the above order.

■ It will be remembered that section 1021.5 provides that under the circumstances there enumerated, "a court *may* award attorney's fees." Such an award is *discretionary,* and will not be reversed on appeal unless an abuse of that discretion appears. (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 938 [154 Cal.Rptr. 503, 593 P.2d 200]; *Rich* v. *City of Benicia* (1979) 98 Cal.App.3d 428, 436 [159 Cal.Rptr. 473].)

We also observe "that courts may be guided by equitable principles when awarding attorney's fees." (*Harvard Investment Co.* v. *Gap Stores, Inc.* (1984) 156 Cal.App.3d 704, 717 [202 Cal.Rptr. 891]; and see *International*

*Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218, 224, 225 [145 Cal.Rptr. 691, 577 P.2d 1031], *Jones* v. *Drain* (1983) 149 Cal.App.3d 484, 489 [196 Cal.Rptr. 827].)

■ And we think it patent that no important right affecting the public interest had at that point "been vindicated." The trial court's findings and judgment simply declared a duty to comply with Government Code sections 65356 and 65356.1, which sections already had so commanded.

Government Code sections 65356 and 65356.1, among other things, provide that any modification of a general plan shall first be "referred to the planning commission for report and recommendation," and that before such hearing and report the commission "shall hold at least one hearing on the proposed change or addition."

It is observed that plaintiff Grimsley, although he had ample opportunity to do so before commencement of his action, made no complaint or suggestion to the concerned county officials about the failure to comply with Government Code sections 65356 and 65356.1, or in what respects those statutes were not followed.

We are of the opinion, in a case such as this, that before commencing his action a "private attorney general," such as plaintiff Grimsley, must be required reasonably to point out to the responsible county official or administrative or legislative body, such a claimed shortcoming of a general plan, thus to avoid litigation and substantial public expense.

The situation is reasonably analogous to that which confronted the court in *Phelan* v. *Superior Court* (1950) 35 Cal.2d 363, 372 [217 P.2d 951], where it was said: "Before seeking mandate in an appellate court to compel action by a trial court, a party should first request the lower court to act. If such request has not been made the writ ordinarily will not issue unless it appears that the demand would have been futile."

Here, it is a near certainty that had Grimsley timely pointed out to an appropriate county official or agency, the respects in which Government Code sections 65356 and 65356.1 had not been followed, appropriate corrective action would have been promptly forthcoming.

Applying the rationale of *Phelan* v. *Superior Court, supra,* 35 Cal.2d 363, we hold that attorney fees under Code of Civil Procedure section 1021.5, will not be awarded unless the plaintiff seeking such fees had reasonably endeavored to enforce the "important right affecting the public interest," *without litigation and its attendant expense.*

On plaintiff Grimsley's appeal numbered A021794, we observe neither error nor abuse of discretion.

We continue with our factual-procedural narrative of the case.

A few months *after* the above-noted judgment and writ, the county filed its "Return to Peremptory Writ of Mandate." The return declared, in effect, that a general plan had been approved by the planning commission, and adopted in accordance with the writ of mandate and the law. Following a hearing the superior court, "having found that said return is complete in every particular and good cause appearing therefor, . . . ordered that the writ of mandate issued in this matter is hereby discharged and no longer of any force or effect."

Thereafter plaintiff Grimsley, claiming responsibility for the general plan's revision, which he insisted had "resulted in the enforcement of an important right affecting the public interest and conferring a significant benefit upon the general public," again moved for attorney fees under Code of Civil Procedure section 1021.5.

That motion for attorney fees was also denied by the superior court. The denial is the basis of plaintiff Grimsley's second appeal (A025660).

■ We opine that the court might reasonably have drawn any one of three inferences from the record, i.e., (1) as claimed by plaintiff Grimsley, that "this litigation is the proximate cause of the changes," (2) that the county would in any event, itself have made the revisions, or (3) more likely, that they were made upon the recommendation of the state's Director of Planning and Research. The superior court presumably chose to draw the second or third inference, a ruling which is binding upon us. (See *Grainger* v. *Antoyan* (1957) 48 Cal.2d 805, 807 [313 P.2d 848].)

For this reason, and the above-stated reasons in our discussion of plaintiff Grimsley's appeal numbered A021794, we also find neither error nor abuse of discretion in relation to his appeal numbered A025660.

For manifest reasons plaintiff Grimsley's motion for attorney fees on his appeal is denied.

The orders of the superior court from which the appeals numbered A021794 and A025660 were taken are, and each is, affirmed.

Holmdahl, J., concurred.

RACANELLI, P. J.—I concur in the result on the basis of the trial court's finding that correction of the procedural defect did not result in the enforcement of an important public right within the meaning of Code of Civil Procedure section 1021.5 authorizing discretionary attorney fees. I would express no opinion whether the precondition of enforcement inevitably requires prelitigation enforcement efforts.

A petition for a rehearing was denied May 16, 1985.