65 Cal.Rptr.3d 73 (2007)
154 Cal.App.4th 406
Cristina VASQUEZ, Plaintiff and Respondent,
v.
STATE of California, Defendant and Appellant.
No. D048371.
Court of Appeal of California, Fourth District, Division One.
August 22, 2007.
*76 Archer Norris, Thomas S. Clifton and Sonny T. Lee, Walnut Creek, for Appellant and Defendant.
Law Offices of Robert Berke, Robert Berke, Santa Monica, and Joseph A. Pertel, for Plaintiff and Respondent.
McCONNELL, P.J.
In this taxpayer waste action, the State of California (the State) appeals an order awarding Cristina Vasquez additional attorney fees under the private attorney general statute (Code Civ. Proc.,[1] ß 1021.5) for work pertaining to the enforcement of a stipulated injunction that requires the State to comply with Proposition 139, the Prison Inmate Labor Initiative of 1990 (Pen.Code, ß 2717.1 et seq.), by compelling joint venture employers to pay inmates wages that are comparable to wages paid in the private sector. The State contends Vasquez is not entitled to fees because after entry of the stipulated injunction she is no longer a successful party within the meaning of Code of Civil Procedure section 1021.5, her continued involvement did not result in implementation of the injunction or confer a significant benefit on the public, and she was required to make a prelitigation settlement attempt as a prerequisite to obtaining fees. We conclude the State waived the last issue by not raising it at the trial court, *77 and in any event Vasquez was excused from any prelitigation settlement requirement under futility principles. We conclude the other contentions also lack merit. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Previous Appeals
In our first opinion in this case, we held as a matter of first impression that the State has a duty under Proposition 139 to enforce a joint venture employer's duty to pay wages to inmates that are comparable to wages paid in the private sector, given the State's right to a percentage of their wages to defray expenses of incarceration. We reversed a judgment entered for the State after the sustaining of a demurrer to Vasquez's action. (Vasquez v. State of California (2003) 105 Cal.App.4th 849, 851, 856-857, 129 Cal.Rptr.2d 701 (Vasquez I).)
The matter was tried in January 2004, and after two days of testimony the parties entered into a stipulated injunction. The injunction, filed on February 17, 2004, requires the State to "make reasonable and good faith efforts" to obtain information from joint venture employers pertaining to wages and to "take reasonable steps to identify the comparable wages required to be paid as required by Penal Code [section] 2717.8." Based on the injunction, the trial court awarded Vasquez $1,257,258.60 in attorney fees under the private attorney general statute. (ß 1021.5.)
The State appealed and we upheld the award. The Supreme Court granted review on the single issue of whether as a prerequisite to receiving fees Vasquez was required to reasonably attempt to settle the matter before filing suit (Vasquez v. State of California, review granted August 16, 2006, S143710, 49 Cal.Rptr.3d 208, 142 P.3d 1184 (Vasquez II)), an issue we concluded the State waived by not raising it at the trial court or presenting a cogent argument on appeal. That matter is pending.
The trial court then conducted proceedings on, and ultimately rejected, the State's proposed wage plans for the few private employers remaining in the joint venture program. The court also awarded Vasquez an additional $242,055 in attorney fees. The State appealed, and in an unpublished opinion we upheld the orders as within the court's discretion. We concluded the court did not improperly reject the opinions of its expert, Barbara Santos, regarding comparable wages. Rather, the court reasonably lacked confidence in her recommendations, which Vasquez disputed and were fraught with problems. For instance, Santos's calculations rendered wages in some instances that were below minimum wage. (Vasquez v. State of California, review granted August 13, 2007, S153813 (Vasquez III).)
As to attorney fees, we rejected the argument Vasquez was not entitled to fees incurred after entry of the stipulated judgment, and that her continued oversight did not confer a significant benefit on the public. Further, we again found the State waived the issue of whether prelitigation settlement efforts were a prerequisite to a fee award under the private attorney general statute. Further, we concluded that even if there were such a prerequisite, Vasquez was excused from it because attempts to settle would have been futile. (Vasquez III, supra, S153813.)

Instant Appeal
While Vasquez III was pending, the trial court continued to monitor the State's progress in implementing the stipulated injunction.
In addition to requiring the State to ensure joint venture employers' compliance with Proposition 139's comparable *78 wage provision, the stipulated injunction required the State to "complete steps to amend the Department Operations Manual ... and Department of Corrections[[2]] Administrative Regulations to regulate the manner within which the requirements of Proposition 139 regarding comparable wage rates for joint venture programs are to be monitored." The State was required to serve Vasquez with a draft of its proposed amendments when the Department approved it, "not later than 6 months from the date of entry of [the] injunction (if available) or as soon thereafter as it is available," and to "consider any comments or objections from [Vasquez] during the public comment period." Vasquez reserved the right to petition the court for relief if she believed the proposed amendments did not comply with Penal Code section 2717.8.
After an April 2005 hearing, the court ordered the parties to meet and confer regarding disagreements over the State's draft amendments to the administrative regulations. On May 26 the parties jointly filed a copy of the draft regulations and a discussion of the issues on which they agreed and disagreed. At a June 9 hearing, the court determined that three of the five amendments that remained in dispute violated the stipulated injunction. The State took the position that any language the court fashioned would not be binding since the amendments were subject to an administrative hearing process. Vasquez asked the court to suggest language that would comply with the injunction, but the court declined to issue an advisory opinion. The court also expressed frustration with the State's delay in implementing the injunction and threatened to issue an order to show cause (OSC).
In July 2005, the court scheduled an OSC hearing for August 5 to determine why employees of the Department that the State had designated as responsible for implementing the joint venture program should not be held in contempt. The State filed a verified statement of its counsel to disqualify the trial judge, William Pate, on the grounds he refused at the June 9 hearing to provide wording for the regulations in dispute unless it agreed to waive its right to appeal the matter, and "Judge Pate himself determined that he would prosecute the alleged contempt." Vasquez opposed the disqualification on the grounds it was untimely and misrepresented Judge Pate's comments.[3]
Judge Pate did not disqualify himself, but at the August 5, 2005 hearing he characterized the proceeding as "a fact-finding hearing to determine if charges will be brought." The court observed the stipulated injunction was entered in February 2004, and in March it had the Department employees responsible for complying with it served with the injunction so they would understand their obligations, yet "little, if anything, has happened ... that results in ... compliance."
Jeanne Woodford, the Department's undersecretary and formerly its director, testified she was responsible for implementing the injunction. She believed she saw the injunction, but she never reviewed any progress report from any State employee, never met with or spoke to any Department employee about Proposition 139 wage compliance, never saw any comparable *79 wage or back wage study by the State's expert, Santos, was unaware of any of Santos's conclusions, never directed anyone to collect back wages, and other than privileged information she received from counsel, she was unaware of whether joint venture employers were violating Proposition 139. Woodford also testified she read the amendments to the administrative regulations for the first time that day. She explained that because of the scope of her position, she was required to delegate issues pertaining to the joint venture program to other employees.
John Dovey was the Department's director of the Division of Adult Institutions and was previously its chief deputy director for field operations. Dovey could not identify any part of the stipulated injunction for which he was responsible, he had seen none of Santos's reports and had no idea who she was, and he had no idea if any joint venture employer was underpaying its workers. Dovey understood that Pub Brewing was in bankruptcy and left the joint venture program owing inmates "quite a bit of ... money," but he never observed the operation and had no idea what sort of equipment or other property it had on site.[4] Dovey had no idea how many years back the State could collect wages and no understanding of the detrimental aspects of delay.
Mary Philip testified that since February 2005 she was responsible for overseeing operation of the joint venture program and it was her "number one priority." Philip had not seen any wage study by Santos, but another employee advised her Santos concluded some joint venture employers were not paying comparable wages. Philip testified that she had done nothing to collect back wages due inmates, explaining: "In part, the whole thing is debatable as to her [Santos] study. There was some question as to whether or not that was acceptable ..., whether the formula used was correct.... So it was up in the air as to whether she had the accurate data." When asked whether she questioned the sufficiency of Santos's reports, Philip responded, "Yeah, I do." Philip knew the issue was on appeal, and she explained, "I'm ... waiting for some instruction from the court." Additionally, Philip testified the Department had notified joint venture employers they were required to pay comparable wages, and it had "Santos going back to see if they are indeed paying that wage." Further, Philip testified she was aware that Pub Brewing planned to leave the joint venture program without paying wages due inmates. Philip however, had no idea how much Pub Brewing owed its employees or how much of its security bond could be used to pay wages.[5]
*80 Other witnesses then testified about the draft amendments to the administrative regulations. The State produced evidence that it takes approximately 18 months to amend regulations, because of public comment and response periods and public hearing requirements.
The court found that as "to the regulations, ... the ship has probably sailed ... in the sense that we are getting close to the time that they are going to go into effect. Whether ... they comply with the injunction, that will be up to [Vasquez] to submit something to the Court that would result in a hearing on the regulations ... So that's not ... before me [at] this point." The court went on to explain: "The back wages are really the meat of this litigation. And to date there has not been one cent collected. So it's been a disaster from that standpoint. It's clear to the Court, based upon the evidence that I've heard today, that we really don't have anybody with any knowledge in the area who' is watching it, knows what's going on or why it's going on. So that is, I think, a significant problem."
The court ordered that Santos appear on August 11, 2005, to present a compilation of all back wages due under her comparable wage plan. The court also advised the State to produce "whoever the decisionmaker is at the Department" to explain "what they are going to do about this issue." The court noted that "every day the statute runs on some amount of money," "[s]o we need to continue to march on the back wage issue."
The hearing was continued to August 23. The joint venture employers at issue were Pub Brewing, Western Manufacturing, Labcon North America (Labcon) and Allwire, Inc. (Allwire). Santos, however, had prepared a draft report regarding back wages owed by only the first two companies. Santos calculated that Pub Brewing owed inmates $257,766 in back wages, and Western Manufacturing owed inmates $227,250 in back wages.
Santos testified her analysis went back to 2001, but she did not have payroll stubs for Pub Brewing and Western Manufacturing that gave the number of hours inmates worked during each pay period. She had pay stubs only for Pub Brewing for the latter part of 2003 and the early part of 2004. Within the previous month she asked a Department employee if additional pay stubs were available, and he told her they were not, but "he had the net wage distributions" and "from late 2004 they had gross wage information." Santos also testified she obtained a couple of time sheets from Pub Brewing and she relied on a former employee of the company for "what assignments inmates had" and their wage rates. She conceded her back pay calculations would be more accurate with pay stubs. Santos also acknowledged that subsequent to the State's appeal in Vasquez III, she amended her comparable wage plan recommendations for Pub Brewing, Western Manufacturing and Allwire, but had not yet submitted the amendments to the State.
Vasquez pointed out that for Pub Brewing, Santos appeared to rely on inmate wages below minimum wage, and her calculations included no interest or statutory amounts for violation of wage laws. Additionally, Santos did not take into account inmates' skill levels or seniority.[6]
Dovey testified as the Department's decisionmaker. He acknowledged that nothing had been done to recoup unpaid wages. He testified that once he received Santos's final back wages report on Pub Brewing *81 and Western Manufacturing, he "would need an analysis, cost benefit analysis of the report itself." Then, he would seek advice of counsel. He also testified he first met Santos at the hearing and first read her reports only two days before the hearing.
The court explained: "It appears to the court from the six years I've been dealing with this case that the Department ... ignored [Proposition 139] and did not insure that the companies who were coming into the [prison] system were paying prevailing wages so they were not taking jobs away from people who were law-abiding citizens on the outside. [∂] That's the reason for this lawsuit.... [∂] As I expressed the last time you were here, I'm at a complete loss as to why the State would fight this Court tooth and nail at every turn any effort by the Court to get the State to collect money that is due the State. Now, I've not figured that out, and maybe sometime ... you will ... find out how much the State has spent ... fighting attempts by this Court to get the State to do what it came to the Court saying it wanted to do [in the stipulated injunction] and has failed for 18 months [to do] and has had numerous hearings and has spent hundreds and hundreds and hundreds of thousands of dollars resisting at every effort, at every turn, from the viewpoint of the Court."
The court criticized the State for not pursuing joint venture employers for back wages on the ground the exact amount due had not been calculated by its expert. The court stated, "when you [Dovey] talk about cost benefit analysis, I'm thinking ... here we go again" with more delays. The court further explained: "[T]ime is of the essence. The Court's patience is gone. We've waited 18 months. Early on, plaintiffs counsel kept trying to get me to kick the State where it sits down and get them to start moving on this case. But I gave them, as I think one should a separate governmental agency, the time to do it themselves and to do it right. But now 18 months has gone by and we have long since exhausted that time."
The court stated that at the next hearing it wanted to hear what efforts the State had made to ensure the inmates were being paid comparable wages, and to secure back pay from Western Manufacturing. It also intended to schedule a hearing to consider extending the stipulated injunction.
At a September 22, 2005 hearing, Dovey testified he had learned there were errors or omissions in Santos's draft back wage report and he asked her to write an addendum. Further, he had the "cost benefit analysis prepared of the back wages based on [Santos's] report," and had her report been accurate, "that analysis would already be completed." Dovey also testified the Department received approval to hire collection counsel should mediation of back wage issues fail.[7] Further, Dovey testified amendments to the administrative regulations had been adopted by the Office of Administrative Law.
The State submitted a September 7, 2005 letter from Dovey to Western Manufacturing, that advised the company it was in violation of Proposition 139 by not paying inmates comparable wages. The letter demanded that the company begin paying comparable wages within 30 days, or the Department would terminate its contract and lease. The letter also asked Western *82 Manufacturing to mediate the back wages issue. The letter stated the company was provided with Santos's comparable, wage recommendations in November 2004, and informed the standards were to be implemented by January 1, 2005. It further stated that Santos inspected the facility in July 2005 and confirmed the company continued to violate the law.
During his testimony, Dovey conceded that despite the January 1 deadline, Western Manufacturing still paid all inmates minimum wage and he knew of nothing that was done to obtain the company's compliance. Dovey was unaware that in December 2004, Santos testified that Western Manufacturer's owner threatened to leave the joint venture program if it had to pay inmates more than minimum wage. Dovey had learned recently, though, that Western Manufacturing may intend to leave the prison site and he instructed the warden to notify him and "[f]reeze the gate" if any equipment was being unbolted from the floor or moved.
The State had sought no back wages from Labcon or Allwire, as Santos had not submitted any reports for those entities. Dovey testified he expected to receive her analysis within approximately 60 days. The court interjected that the State's own expert had determined joint venture employers were violating the law, and it is "incongruous to have an organization [whose] duties are to incarcerate people who have broken the law, to have operating on its property organizations that are operating illegally.... So .., I would think that the Department would want to have any vendor that's on its properties operating within the law. And right now not only is the vendor, Western [Manufacturing], for sure, based on your report, I think the others are operating illegally under Proposition 139. And since it's a joint venture, that means the State is operating illegally in violation of its own laws. The sooner that gets corrected, the better."
The court, however, complemented Dovey on his effort, and found that "we've probably had as much activity in the [past] 30 days as we've had in the [past] five years." The court advised the State that because of the pending appeal in Vasquez III, it could "apply the wage information they think is appropriate." The court cautioned that if the State lost the appeal, "I'm going to be looking at whether ... it was [in] good faith" in using the comparable wage recommendations in Santos's reports. The court anticipated that by September 27, Dovey would send Labcon and Allwire letters requiring them to comply by "a drop dead date" with Proposition 139.
On October 3, 2005, the State filed an opposition to Vasquez's motion to extend the stipulated injunction, and to "expand the stipulated injunction to incorporate Labcon and Allwire." (Some capitalization omitted.) The State argued that since the injunction expressly referred only to the collection of back wages from Pub Brewing and Western Manufacturing, Labcon and Allwire were excluded.
At an October 14 hearing, the court denied as premature the motion to extend the injunction, as it was effective until February 2006. It also found that Labcon and Allwire are subject to the injunction. Santos had not yet submitted a revised back wage report.
At an October 27 hearing, there was a dispute over three of the amended administrative regulations the Office of Administrative Law adopted. The court determined that one of the three regulations violated the injunction and directed the State "to come up with more appropriate language."
*83 Dovey testified he notified Western Manufacturing it was required to pay comparable wages, but it remained noncompliant, and it agreed to mediation and to provide its financial information. Dovey discussed with counsel the prospect of terminating its contract. Dovey believed the few other joint venture employers had provided financial information and were paying inmates comparable wages as set forth in Santos's report. The court directed the State to provide Vasquez with further payroll records, and to prepare and file a claim in the Pub Brewing bankruptcy proceeding. Further, Santos was expected to provide the State with a completed back wage study by November 23.
On January 6, 2006, the State filed a status report and submitted a copy of the claim it submitted in Pub Brewing's bankruptcy proceeding for $841,354.33 in back wages, interest and penalties. The State also submitted the revised text of the amended administrative regulation the court earlier disapproved. Further, the State submitted Santos's tentative back wage reports for Labcon and Allwire.
At a January 12 hearing, the court approved the regulation language and allowed 30 days for its adoption. The court rejected Santos's reports "as inadequate as to the methodology she used."[8] Vasquez had opposed the reports on numerous grounds, including that Santos excused a joint venture employer's failure to pay comparable wages to some employees if it paid the majority of employees comparable wages or above. The court also set a deadline of January 30 for the end of mediation with Western Manufacturing and continued the injunction to February 17, 2008.
At a February 6, 2006 hearing, Dovey testified the mediation with Western Manufacturing was unsuccessful, it persisted in paying inmates minimum wage, and he had asked the State to cancel its contract with the company and file suit against it. The State's counsel represented the complaint had been filed. The State later submitted a copy of the complaint to the court, and it alleged Western Manufacturing had been violating the comparable wage law for-the past nine and one-half years.
The court scheduled a hearing for March 20 to obtain Santos's back pay reports on Labcon and Allwire. The court noted it would accept a reasonable plan, but until recently the State's conduct was unreasonable. The court found the State "has in the history of this case taken a scorched-earth, drag-your-feet ... approach to the litigation where it has fought tooth and nail to avoid doing what it voluntarily agreed to do."
On January 20, 2006, Vasquez had moved under section 1021.5 for $349,635.98 in attorney fees (lodestar amount of $268,950.75 with a multiplier of 1.3) incurred since the previous award. During a hearing on March 9, the court awarded Vasquez $307,338.36 in fees. It disallowed 6.8 hours from the lodestar amount because two attorneys attended a hearing, and it applied a multiplier of 1.15.

DISCUSSION

I

Standard of Review
Section 1021.5 codifies the "private attorney general" doctrine of attorney fees articulated in Serrano v. Priest (1977) 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303 and other decisions. (Flannery v. California Highway Patrol (1998) 61 Cal.App.4th *84 629, 634, 71 Cal.Rptr.2d 632 (Flannery).) The statute authorizes the court to award fees to a successful party in an action that "has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement ... are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (ß 1021.5.)
"Underlying the private attorney general doctrine is the recognition that privately initiated lawsuits often are essential to effectuate fundamental public policies embodied in constitutional or statutory provisions, and that without some mechanism authorizing a fee award, such private actions often will as a practical matter be infeasible. The basic objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases." (Flannery, supra, 61 Cal. App.4th at p. 634, 71 Cal.Rptr.2d 632.)
"Whether to award fees under this statute is a matter within the trial court's discretion and will not be disturbed on appeal absent a showing of abuse of that discretion. But discretion may not be exercised whimsically, and reversal is required where there is no reasonable basis for the ruling or when the trial court has applied the wrong test to determine if the statutory requirements were satisfied." (Flannery, supra, 61 Cal.App.4th at p. 634, 71 Cal.Rptr.2d 632.)

II

Post-Injunction Attorney Fees

A
The State contends that as a general matter, Vasquez is not entitled to fees incurred after entry of the stipulated injunction as her continued involvement has not assisted in implementing the injunction, she is no longer a successful party and she has not conferred a significant benefit on the public. The State points out that the trial court has not yet adopted a comparable wage plan. It claims the court has given Vasquez a "blank check" and accuses her attorneys of creating work for themselves solely to collect fees.
"The significant benefit criterion calls for an examination whether the litigation has had a beneficial impact on the public as a whole or on a group of private parties which is sufficiently large to justify a fee award. This criterion thereby implements the general requirement that the benefit provided by the litigation inures primarily to the public." (Beasley v. Wells Fargo Bank (1991) 235 Cal.App.3d 1407, 1417,1 Cal.Rptr.2d 459.)
As we explained in Vasquez III, the State's voters and taxpayers constitute a large class of persons, and Vasquez has conferred a significant benefit on them by continuing in her efforts to obtain the State's compliance with the stipulated injunction and Proposition 139. A "party may be considered a successful party within the meaning of section 1021.5 if that party's efforts had the effect of ensuring compliance with the trial court's prior order." (National Parks & Conservation Assn. v. County of Riverside (2000) 81 Cal.App.4th 234, 242, 96 Cal.Rptr.2d 576; California Trout, Inc. v. Superior Court (1990) 218 Cal.App.3d 187, 212, 266 Cal. Rptr. 788; Miller v. Carson (5th Cir.1980) 628 F.2d 346, 348-349.) Although Vasquez has not achieved the State's full compliance with the injunction, her efforts were instrumental in implementing several aspects of it, including the State's promulgation *85 of amended administrative regulations (discussed below); the State's filing of a claim in the Pub Brewing bankruptcy proceeding, and its cancellation of its contract with and suit against Western Manufacturing, which had violated Proposition 139 on State property for more than nine years. Further, Vasquez successfully opposed the State's position that the injunction does not require it to collect back wages from Labcon and Allwire.
The State's position that Vasquez is not entitled to fees because the State has not yet submitted an adequate comparable wage plan is specious. This litigation has gone on for several years and because of the State's noncompliance the court has extended the stipulated injunction to February 2008. As outlined above, the trial court has been frustrated throughout this action by the State's tardiness and recalcitrance.
Approximately 18 months after the injunction was entered, the Department employees the State designated as responsible for implementing it had not seen Santos's reports and had no understanding of, as the court put it, "what's going on or why it's going on." Vasquez cannot be expected to wait until the injunction is fully satisfied or otherwise dissolved to obtain attorney fees. The injunction gives the court continuing jurisdiction to consider any application for attorney fees incurred "in consequence of the injunction, and the parties obviously contemplated Vasquez's involvement throughout the process.
As we also explained in Vasquez III, the trial court cannot be expected to monitor the State's performance without the assistance of its adversary, and Vasquez is not required to depend solely on the trial court, particularly given the State's poor performance. The State asserts that if the court needed assistance overseeing the State's performance, it should have appointed a referee instead of allowing Vasquez's continued involvement. The State, however, fails to note that on April 15, 2005, it filed a written opposition to the appointment of a referee, claiming "it has never intentionally delayed compliance with any order of this Court" and an appointment would "likely delay completion of the Stipulated Injunction rather than facilitate it."
Under all the circumstances, we conclude the court properly exercised its discretion by awarding Vasquez additional postinjunction attorney fees.

B
Further, we reject the State's contention that the amount of fees awarded Vasquez cannot be justified by the de minimus benefit the public has received from her taxpayer waste action. "With respect to the amount of fees awarded, there is no question our review must be highly deferential to the views of the trial court. [Citation.] As our high court has repeatedly stated, `"`[t]he "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"Äîmeaning that it abused its discretion.'"'" (Children's Hospital & Medical Center v. Bont· (2002) 97 Cal.App.4th 740, 777, 118 Cal. Rptr.2d 629.)
The State ignores that its own conduct has extended the litigation and substantially increased awardable fees. As the court explained, "the [S]tate has in the history of this case, taken a scorched-earth, drag-your-feet . . . approach to the litigation where it has fought tooth and nail to avoid doing what it voluntarily agreed to do." A *86 defendant that engages in such tactics "'"cannot ... be heard to complain about the time necessarily spent by the [plaintiff] in response."'" (Ketchum v. Moses (2001) 24 Cal.4th 1122, 1141, 104 Cal.Rptr.2d 377, 17 P.3d 735.)

C
The State also complains that the court did not make the proper findings on the record under section 1021.5 before awarding Vasquez attorney fees. Where, however, the court was not asked to make findings on factual issues and did not do so, we must infer all findings necessary to support the order on fees and uphold it if it is based on substantial evidence. (Beach Colony II v. California Coastal Com. (1985) 166 Cal.App.3d 106, 110, 212 Cal. Rptr. 485; San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino (1984) 155 Cal.App.3d 738, 753-754, 202 Cal.Rptr. 423.) The State does not suggest it requested findings of fact regarding the elements of section 1021.5, for instance whether Vasquez's postinjunction work conferred a significant benefit on the public. As the evidence in the record amply supports an award under section 1021.5, we affirm the order.

III

Objections to Fees for Certain Tasks

A

Amendments to Administrative Regulations
The stipulated injunction required the State to amend the Department's administrative regulations pertaining to the regulation of joint venture employers' compliance with Proposition 139, and it gave Vasquez the right to petition the trial court for relief if she believed the proposed amendments did not comply with Penal Code section 2717.8. The State contends Vasquez is not entitled to attorney fees associated with this issue because the court overruled the majority of her objections, and she was thus not the successful party. The State claims Vasquez caused only a single revision to a proposed amendment.
The State's rendition is incorrect as Vasquez prevailed on several of her objections. The parties jointly submitted a document on the State's proposed amendments to the regulations, and it shows that pursuant to Vasquez's objections the State voluntarily revised the text of four amendments. The parties submitted five disputed amendments to the court for its determination, and it originally concluded that three of them did not comply with the stipulated injunction. Notwithstanding the court's ruling, the State finalized approval of the amendments in their original form, which required Vasquez to submit additional briefing. At a follow-up hearing, the court ruled that one of the regulations violated the injunction and two did not.
The State asserts that even if Vasquez partially prevailed, the court should have reduced the fee award. It cites Feminist Women's Health Center v. Blythe (1995) 32 Cal.App.4th 1641, 1674, 39 Cal. Rptr.2d 189, in which the court explained a "reduced fee award is appropriate when a claimant achieves only limited success." The issue of whether to reduce attorney fees for partial success is within the court's discretion (Sokolow v. Comity of San Mateo (1989) 213 Cal.App.3d 231, 249, 261 Cal.Rptr. 520), and we cannot say the court abused its discretion here by awarding fees for work the stipulated injunction gave Vasquez a role in, when the parties met and conferred and reached a compromise on several issues, thereby saving the court time and resources, and the court *87 ultimately ruled in Vasquez's favor on at least one other issue.

B

Briefing on Government Code section 1134.0.9
The State next contends Vasquez is not entitled to attorney fees for briefing the court on Government Code section 11340.9 because it did not contribute to implementation of the stipulated injunction. At the April 18, 2005 hearing, the court questioned whether that statute could expedite the amendment of the Department's administrative regulations by circumventing the normal public hearing process. Government Code section 11340.9 contains various exemptions to the requirements of title 2, division 3, part 1, chapter 3.5 of the Government Code, entitled "Administrative Regulations and Rulemaking." Government Code section 11340.1 explains the Legislature established the Office of Administrative Law to conduct "orderly review of adopted regulations" and "reduce the number of administrative regulations and ... improve the quality of those regulations which are adopted."
The State voluntarily submitted a brief on the issue, which concluded Government Code section 11340.9 was inapplicable. Vasquez voluntarily submitted a brief in response, which concluded the statute was applicable. The court did not rely on the statute, but we find no abuse of discretion in the court's award of fees to Vasquez for this work, as it was reasonable for her to respond to the court's inquiry and the State's position. Again, the court was frustrated by the State's lack of progress and sought a solution insofar as the amendments were concerned. A plaintiff may obtain fees on a discrete issue that was unsuccessful, because entitlement to fees under Code of Civil Procedure section 1021.5 is based on the impact of the case as a whole. (Punsly v. Ho (2003) 105 Cal.App.4th 102, 114, 129 Cal.Rptr.2d 89.) A "plaintiff who is successful on only some claims may nonetheless be entitled to recover fees for services on the unsuccessful claims." (Children's Hospital & Medical Center v. Bont·, supra, 97 Cal.App.4th at p. 781, 118 Cal.Rptr.2d 629.)

C

Submission of Referee Names
Additionally, the State contends Vasquez is not entitled to attorney fees for submitting names of potential referees to the court. In an April 7, 2005 order, the court found the State had failed to comply with the injunction, and it had "thwarted efforts by [Vasquez] to properly analyze the validity of the proposed wage plan." The order stated the court intended to appoint a referee under section 639, subdivision (a)(4) to facilitate the State's "full and prompt compliance with the Stipulated Injunction," with the State bearing the referee's fees and costs. The order required the parties to submit the name of an agreed referee, or absent an agreement, required each party to submit the names of up to three nominees. At the April 18 hearing, the court did not select any of the referees whose names the parties submitted, but found the referee should be located in San Diego County. It directed the parties to each submit two names of local referees. The parties complied, but the court never appointed a referee.
We find no abuse of discretion, as Vasquez was required to obey the court's order, and its intention to appoint a referee arose from the State's delay in implementing the stipulated injunction. Indeed, in its opposition to the appointment of a referee, the State wrote, "Candidly *88 recognizing the Court's level of frustration concerning completion of the Stipulated Injunction, [the State] requests the following reporting dates to timely complete the Stipulated Injunction during its agreed timeframe and to comprehensively identify the remaining activities."

D

Participation in Mediation
The State also objects to paying Vasquez's attorney fees for her participation in its mediation with Western Manufacturing regarding the company's failure to pay inmates comparable wages under Proposition 139. The State asserts Vasquez "did not meet the threshold requirement of being a prevailing party because the mediation was unsuccessful," and "the public has received absolutely no benefit from the failed mediation efforts."
The court properly awarded fees for Vasquez's involvement in the mediation. The stipulated injunction provides, "In the event that the Parties and the representatives of Western [Manufacturing] and Pub Brewing cannot agree upon an amount to be collected from these entities, the parties shall make reasonable efforts to bring these joint venture employers into the Court for mediation." (Italics added.) Thus, the parties implicitly agreed Vasquez would be involved. "California case law clearly provides a trial court discretion to award a fee that compensates work performed in a collateral action that may not have been absolutely necessary to the action in which fees are awarded but was nonetheless closely related to the action in which fees are sought and useful to its resolution." (Children's Hospital & Medical Center v. Bont·, supra, 97 Cal.App.4th at pp. 779-780, 118 Cal.Rptr.2d 629.) The Western Manufacturing mediation was not only closely related to the implementation of the stipulated injunction, it was an element of the injunction.
Further, the State points to nothing in the record suggesting it discouraged Vasquez's participation, and to the contrary, at the trial court the State argued Vasquez should not recover fees for the mediation because the "unfortunate outcome of the mediation was due in part to [Vasquez's] unwillingness to participate.... While [Vasquez] initially vigorously insisted on taking part in the mediation, her lead counsel subsequently declined direct participation and did little if anything to support the success of the mediation." To refute that accusation, Vasquez submitted the declaration of her counsel that stated he drove from Santa Monica to San Diego for the mediation, but neither the State's nor Western Manufacturing's attorney asked him to join in and did not even speak to him about the mediation the entire day, "despite the fact that the mediator told me that he told them that I was prepared to participate in the mediation." The State cannot reasonably characterize Vasquez's participation as both unnecessary and insufficiently zealous.

IV

Prelitigation Settlement Attempt
As it has in past appeals, the State contends Vasquez is not entitled to attorney fees under section 1021.5 because she made no reasonable attempt to settle her claim before filing suit against the State. As we explained above, the question of whether a prelitigation settlement attempt is a prerequisite to the recovery of private attorney general fees, under the rational of Graham v. DaimlerChrysler Corp. (2004) 34 Cal.4th 553, 21 Cal.Rptr.3d 331, 101 P.3d 140 (Graham) and Grimsley v. Board of Supervisors (1985) 169 Cal. App.3d 960, 213 Cal.Rptr. 108 (Grimsley), *89 is currently on review before the California Supreme Court in Vasquez II.
We decline to determine the applicability of Graham and Grimsley because at the trial court the State never argued a reasonable settlement attempt was a prerequisite to an award. "`Ordinarily the failure to preserve a point below constitutes a waiver of the point. [Citation.] This rule is rooted in the fundamental nature of our adversarial system.... "`In the hurry of the trial many things may be, and are, overlooked which could readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his [or her] legal rights and of calling the judge's attention to any infringement of them.'" ... [∂] The same policy underlies the principles of "theory of the trial." "A party is not permitted to change his [or her] position and adopt a new and different theory on appeal. To permit him [or her] to do so would not only be unfair to the trial court, but manifestly unjust to the opposing party." [Citation.] The principles of "theory of the trial" apply to motions....'" (Sommer v. Gabor (1995) 40 Cal.App.4th 1455, 1468, 48 Cal.Rptr.2d 235.)
Although we have discretion to consider a belatedly raised question of pure law (Sommer v. Gabor, supra, 40 Cal.App.4th at p. 1468, 48 Cal.Rptr.2d 235), the issue of a reasonable prelitigation settlement attempt involves questions of fact in addition to a legal issue of statutory construction. In Graham, the court explained, "Lengthy prelitigation negotiations are not required, nor is it necessary that the settlement demand be made by counsel, but a plaintiff must at least notify the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demands within a reasonable time." (Graham, supra, 34 Cal.4th at p. 577, 21 Cal.Rptr.3d 331, 101 P.3d 140.)
Vasquez asserts "[m]ultiple time entries documented settlement discussions prior to filing," and additionally, settlement attempts were futile because the "State indicated it was not willing to engage in settlement discussions in its case management conference statement ..., stated it had no one with authority to settle, ... unilaterally cancelled depositions, resisted discovery ..., and opposed relief, including any injunctive relief, as recently as the week before ... trial." This court is not ordinarily a trier of fact, and acknowledging that the Supreme Court disagrees with us on the waiver issue, as demonstrated by its grant of review in Vasquez II, we again deem the matter waived.
Further, as we found in Vasquez III, even if a prelitigation settlement attempt is ordinarily a prerequisite of obtaining attorney fees under section 1021.5, Vasquez is excused from the requirement because, unlike in Grimsley, the record reveals no "near certainty" that had Vasquez "timely pointed out" to the State that joint venture employers were not paying inmates prevailing wages under Proposition 139, "appropriate corrective action" would have been promptly forthcoming. (Grimsley, supra, 169 Cal.App.3d at p. 966, 213 Cal.Rptr. 108.) To the contrary, the record in each appeal, including the instant one, shows the State's continuing recalcitrance on complying with Proposition 139 and that settlement attempts by Vasquez would have been futile. In Grimsley, the court relied on Phelan v. Superior Court (1950) 35 Cal.2d 363, 372, 217 P.2d 951, which held: "`Before seeking mandate in an appellate court to compel action by a trial court, a party should first request the lower court to act. If such request has not been made the writ ordinarily will not issue unless it appears that the demand would have been futile.'" (Grimsley, at p. 966, 213 Cal.Rptr. 108.)

*90 DISPOSITION
The order is affirmed. Vasquez is entitled to costs on appeal.
WE CONCUR: BENKE and NARES, JJ.
NOTES
[1] Following statutory references are also to the Code of Civil Procedure unless otherwise specified.
[2] The former Department of Corrections is now referred to as the Department of Corrections and Rehabilitation (the Department).
[3] The State filed a notice of appeal of the court's orders pertaining to the OSC, and also challenged the orders by way of a writ petition. We dismissed both matters. (Vasquez v. State of California (Aug. 26, 2005, D046975); State of California v. Superior Court (Aug. 4, 2005, D046919).)
[4] The stipulated injunction provides: "[The State] shall . . . investigate the issue of Pub Brewing and Western [Manufacturing's] prior compliance with comparable wage provisions of Penal Code ß 2717.8. If [the State] concludes that either of these employers has failed to comply with the comparative wage provisions, . . . [it] shall take reasonable steps ... to secure payment of any wages owing." The injunction also requires the State to "make reasonable good faith efforts to collect the amounts it determined are due and owing to inmate employees of the Pub Brewing Company, and shall update the Court on efforts to collect the amounts due.... Effective immediately, [the State] shall take reasonable steps to ensure that Pub Brewing Company may not remove its operating tools and machinery from ... prison facilities unless that employer posts a bond for the amount of back wages due and owing to inmate employees."
[5] Under the stipulated injunction, each joint venture employer is required to post a security bond "in the amount of two months wages for the workforce contemplated after 6 months of operation." If the Department calls a bond, the funds must be first used to pay past due wages, and any surplus may be used to pay amounts owed the State.
[6] The stipulated injunction requires that comparable wage analyses take into account such factors as seniority, performance and the technical nature of the work.
[7] The stipulated injunction provides that if the parties, Western Manufacturing and Pub Brewing "cannot agree upon an amount to be collected from these entities, the parties shall make reasonable efforts to bring these joint venture employers into the Court for mediation."
[8] The appellate record does not include a reporter's transcript from the January' 12 hearing, and thus we must rely on the court's minutes.