[Civ. No. 29617. Fourth Dist., Div. Two. May 11, 1984.]

SAN BERNARDINO VALLEY AUDUBON SOCIETY, INC.,
Plaintiff and Appellant, v.
COUNTY OF SAN BERNARDINO et al., Defendants and Appellants;
GOLD MOUNTAIN MEMORIAL PARK, INC.,
Real Party in Interest and Appellant.

740

744

**COUNSEL**

D. Dwight Worden and W. Scott Williams for Plaintiff and Appellant.

Alan K. Marks, County Counsel, and Paul F. Mordy, Deputy County Counsel, for Defendants and Appellants.

Rogers & Wells and William D. Ross for Real Party in Interest and Appellant.

OPINION

MORRIS, P. J.—

FACTS

Defendant Gold Mountain Memorial Park, Inc. (Gold Mountain), real party in interest, is the owner of 14 acres of land in the Baldwin Lake area of San Bernardino County. The property is zoned A-1, limited agriculture, and the general plan land use designation is Res-4, residential development up to four units per acre. Gold Mountain submitted an application for site approval for a public cemetery on the property pursuant to sections 84.0205 and 84.0320(b) of the San Bernardino County Development Code. Each acre would be fully developed into 1,400 gravesites, and a driveway and parking area would be constructed. An initial study of environmental impacts was completed which indicated an environmental impact report (EIR) should be required. The EIR identified two unavoidable impacts of the project: that significant natural and cultural resources would be irreversibly committed to development and that ground disturbing activities would result in elimination of the habitat of sensitive plant species.

The environmental review board (ERB) reviewed and amended the EIR. The ERB held public hearings and determined that the EIR, as amended, was adequate and that the cemetery would have a significant adverse effect on the environment because of the two identified unavoidable impacts. Plaintiff San Bernardino Valley Audubon Society (Audubon) did not appear at the ERB hearings.

The planning commission next held public hearings on the site approval. A representative of Audubon addressed the commission regarding possible loss of rare and endangered species of plants, possible disturbance of bald eagle habitats, and consideration of an alternative site. The planning staff recommended denial of the site approval because the project would not conform to the County general plan policy of protecting rare plant habitats.

After hearing public testimony and discussing the project, the planning commission recommended approval of the cemetary subject to certain conditions. The planning commission found that although the project would commit the site to development and would impact some rare plants and their habitat, the proposal would mitigate these effects as much as possible and the social and environmental needs outweighed any impact which would not be mitigated. The commission found that a cemetery in the Big Bear Valley would reduce the amount of pollution, energy consumption, and traffic congestion generated by "family and friends of the deceased as they drive downhill to the nearest public cemetery." The commission also found that although the project would have significant adverse environmental effect, the proposed use was consistent with the County general plan because "the potential impact of other uses currently permitted without approval are much more severe in nature."

The county board of supervisors (Board) subsequently heard the matter. Two representatives of Audubon appeared without objection before the Board. After extensive hearings, the Board granted the site approval, certified the EIR, and adopted the planning commission's findings.

Audubon filed a petition for a writ of administrative mandamus and a complaint for declaratory and injunctive relief and attorney's fees. The first cause of action of the petition sought a writ of administrative mandamus under Code of Civil Procedure section 1094.5, alleging that for several reasons the EIR associated with the site approval for a cemetery in the Baldwin Lake area was legally inadequate and unsupported by appropriate findings. The second cause of action also sought a writ of administrative mandamus under Code of Civil Procedure section 1094.5 alleging that the site approval was legally inadequate because it was inconsistent with various elements of the County's general plan, that those elements themselves are legally inadequate, and alleging that the findings supporting the site approval were legally inadequate. The third cause of action sought declaratory relief declaring that the general plan of the County of San Bernardino was legally inadequate with respect to certain lands.

The fourth and fifth causes of action were for injunctive relief based on the first two causes of action. The sixth cause of action sought attorney's fees under either Government Code section 800 or Code of Civil Procedure section 1021.5 based on allegations contained in the preceding causes of action.

The County of San Bernardino (County) and Gold Mountain demurred to and moved to strike portions of the petition. The trial court denied the

motion to strike and the demurrer as to all causes of action except the third, which was sustained without leave to amend. After a hearing on the portions of the petition not affected by the demurrer, the trial court granted the motion for administrative mandamus and ordered the County to set aside all actions taken to approve the cemetery. The court remanded the matter for the preparation of a legally adequate EIR discussion of alternative sites, the preparation of legally adequate findings regarding the feasibility of mitigation measures pursuant to Public Resources Code section 21081, and the preparation of adequate findings with respect to the consistency of the cemetary with the County's general plan pursuant to section 84.0320 of the County code. The court also awarded Audubon attorney's fees under Code of Civil Procedure section 1021.5 in the amount of $20,796.

On appeal, Gold Mountain contends that Audubon failed to exhaust its administrative remedies by failing to appeal the ERB's determination to the Board, that the trial court abused its discretion by substituting its judgment for that of the administrative agency, and further abused its discretion by awarding attorney's fees against Gold Mountain. The County joins the appeal also contending that Audubon failed to exhaust its administrative remedies and that the court's award of attorney's fees was excessive.

Audubon has cross-appealed contending that the trial court improperly sustained the demurrer as to the third cause of action.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

Section 84.0220(a) of the County Development Code provides that any land use decision made by the ERB is appealable to the Board. ■ The County and Gold Mountain contend that because Audubon did not appeal the ERB's determination that the EIR was adequate, it failed to exhaust its administrative remedies and should be precluded from relief under Code of Civil Procedure section 1094.5.

At the time the petition was filed, section 84.0210(b)(1)(B) of the County Development Code provided that unless appealed, land use decisions become final after 15 days. The County contends that Audubon's appearance before the Board was not an appeal of the ERB's findings, but a consideration of the total site application and, in any event, Audubon's appeal would not have been timely. This argument emphasizes the weakness of County's position with respect to the application of the rule of exhaustion of administrative remedies. In view of the relationship between the EIR and the site approval, it is questionable whether the ERB's findings on the adequacy of

the EIR is a "land use decision" within the purview of section 84.0220 of the County code. It is the site approval that constitutes the land use decision. In any event, if the County code is interpreted as the County urges, it curtails rights provided by state law.

The California Environmental Quality Act (CEQA) provides that the lead agency, the Board in this case,[1] shall file a notice of determination when it approves a project (Pub. Resources Code, § 21152). Public Resources Code section 21167, subdivision (c) specifically allows 30 days from the filing of that notice to institute challenges to the EIR. The County's procedure, as interpreted by the county counsel, would cut off that right before the EIR has been adopted.

■ Further, the principal purpose of the doctrine of exhaustion of administrative remedies is to afford administrative tribunals the opportunity to decide in a final way matters within their area of expertise prior to judicial review. (3 Davis, Administrative Law Treatise (1958) Exhaustion of Administrative Remedies, § 20.06, p. 92.) It requires that the parties await the *final* outcome of administrative proceedings before seeking judicial review. (*Woodard* v. *Broadway Fed. S. & L. Assn.* (1952) 111 Cal.App.2d 218, 221 [244 P.2d 467].) In this case, for example, had Audubon appeared before the ERB and the planning commission but failed to appear before the Board, it would have failed to exhaust its administrative remedies. The doctrine contemplates that the designated final administrative arbiter is deprived of review, not that an intermediate procedure is circumvented. ■ Here, the Board, the agency with the ultimate responsibility to approve or disapprove the project, considered and determined the adequacy of the EIR as well as the total site application. Therefore, the purpose of the rule of exhaustion of administrative remedies was fully served by the respondents appearance before the Board.

Moreover, an exception to the exhaustion of administrative remedies rule was recognized in *Environmental Law Fund, Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105 [122 Cal.Rptr. 282]. The environmental group in that case was opposing a conditional use permit issued by the planning commission. Although numerous persons protested the permit, the group did not appear at hearings, nor was it shown they had notice of the hearings. The group did not appeal the planning commission decision to the town council as permitted by local ordinance. The court held that the environ-

---

[1] Because the Board has the ultimate responsibility to approve or disapprove projects under San Bernardino County Code section 83.01135, it is the lead agency. (Pub. Resources Code, §§ 21067, 21063; *Newberry Springs Water Assn.* v. *County of San Bernardino* (1984) 150 Cal.App.3d 740, 745 [198 Cal.Rptr. 100].)

mental group was acting in the public interest and since they were "not parties" to the administrative proceedings, the application of the doctrine of exhaustion of administrative remedies would operate to bar the public from redressing a public wrong. (*Id.,* at p. 114.)

The County points our attention to *Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412 [194 Cal.Rptr. 357, 668 P.2d 664]. In that case the Supreme Court found that an environmental group would not be excused from the requirements of the exhaustion doctrine merely because they were seeking to enforce a public right. Without passing on the validity of *Corte Madera,* the court explicitly held that the plaintiffs could not be excused under *Corte Madera* because they had received notice of and actively participated at *every stage* of the hearing process, and still did not appeal the decision as permitted by local ordinance. (*Id.,* at p. 417.)

In the case before us, the minutes of the ERB hearings, the first stage of the proceedings, do not indicate that the Audubon Society appeared at the hearings, nor is there evidence that they received notice of the hearings. The ERB found the EIR adequate on August 18, 1981. The next stage of the proceedings, at which Audubon did appear, was the hearing by the planning commission. The County argues that because Audubon appeared at this stage, *Sea & Sage* should apply and that decision precludes Audubon from being excused from the doctrine. However, the planning commission hearing did not occur until October 29, 1981. Since the County code requires an appeal 15 days after the ERB decision, if we interpret the code and cases as the County urges, Audubon could conceivably have been precluded from an appeal before it even had notice of the decision. This case is distinguishable from *Sea & Sage* for a further reason. In *Sea & Sage* the city council (the lead agency) had never been given the opportunity to address the plaintiff's specific legal challenges to the adequacy of the EIR (*id.,* at p. 418), whereas, in the present matter the appellants did appear before the Board and the Board heard and considered the very issues presented in this action for administrative mandamus. Therefore, we conclude that plaintiffs did not fail to exhaust their administrative remedies.

STANDARD OF REVIEW

■ Gold Mountain contends that the EIR and the Board's findings were legally adequate, that the substantial evidence test applies and that the trial court erroneously substituted its judgment for that of the Board. Audubon contends that the correct scope of judicial review of the EIR and the findings is whether the County committed a prejudicial abuse of discretion by failing

to proceed in a manner required by law as per Code of Civil Procedure section 1094.5, subdivision (b).

Audubon argues that failure to prepare an adequate EIR is failure to proceed in a manner required by law under CEQA and Code of Civil Procedure section 1094.5 and, while courts do not pass on the correctness of an EIR, the courts are to independently determine the sufficiency of an EIR as an informative document. A close reading of the cases cited by plaintiff, however, demonstrates that the courts were actually utilizing the substantial evidence standard (see, e.g., *County of Inyo v. City of Los Angeles* (1977) 71 Cal.App.3d 185, 189 [139 Cal.Rptr. 396]; *Environmental Defense Fund, Inc. v. Coastside County Water Dist.* (1972) 27 Cal.App.3d 695, 705 [104 Cal.Rptr. 197]).

Further, with respect to Audubon's attack on the adequacy of the EIR and the Board's Public Resources Code section 21081 findings, Public Resources Code section 21168 expressly directs the court to determine only whether the decision is supported by substantial evidence. With respect to the attack on the adequacy of the Board's finding of consistency with the general plan, local administrative agencies are regarded as having quasi-judicial powers and the courts must affirm the agency's determination if it is supported by substantial evidence. (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12].) Therefore, the correct standard of judicial review in this case is substantial evidence.

## ADEQUACY OF EIR

CEQA requires that an EIR must discuss alternatives to the proposed project. (Pub. Resources Code, § 21100, subd. (d).) CEQA guidelines provide that the EIR shall describe all reasonable alternatives to the site which could possibly achieve the basic objectives of the project and state why they were rejected, and that the discussion of alternatives shall focus on alternatives capable of eliminating or reducing any adverse environmental effects, even if they substantially impede the project or are more costly. (Cal. Admin. Code, tit. 14, § 15126(d), formerly § 15143(d).)

■ Although EIRs are not required to be perfect or to discuss project alternatives beyond what is realistically possible (*Foundation for San Francisco's Architectural Heritage v. City and County of San Francisco* (1980) 106 Cal.App.3d 893, 910 [165 Cal.Rptr. 406]), an EIR must produce information sufficient to permit a reasonable choice of alternatives so far as

environmental aspects are concerned. (*Residents Ad Hoc Stadium Com.* v. *Board of Trustees* (1979) 89 Cal.App.3d 274, 287 [152 Cal.Rptr. 585].)

■ The EIR before the Board in this case did contain a section which dealt with alternatives to the proposed project. It listed the alternative of no project and of alternative land use. The discussion of alternative site locations stated:

"Development of this project at another location within the Big Bear area may result in similar adverse impacts. For an alternative geographical location to be more advantageous than the present site, it would need to be equal to the attributes of the present property and not have the sensitive plant species habitat on the property or on adjacent property.

"It should be noted that the Forest Service, in conjunction with the Nature Conservancy, has purchased the parcels south of the subject property to preserve critical sensitive plant habitat. It is our understanding that the Forest Service desires to effect a land trade with the Applicant for certain Forest Service property of less biological and archaeological sensitivity."

The EIR does not discuss whether there actually *are* other sites within the Big Bear area which would be suitable for such a project and do not contain the sensitive plant species habitat but simply that development at another site *may* result in similar impacts. Further, the EIR merely states that the Forest Service had proposed a land trade. It does not discuss the location or attributes of that property or why it would or would not be a feasible alternative. In short, the EIR does not contain the required sufficient degree of analysis to provide decisionmakers with information to allow them to intelligently take account of environmental consequences. (*Santiago County Water Dist.* v. *County of Orange* (1981) 118 Cal.App.3d 818, 831 [173 Cal.Rptr. 602].) In light of the whole record, we conclude that substantial evidence supports the trial court's finding that substantial evidence does not exist to support the Board's findings that the EIR was adequate.

ADEQUACY OF BOARD'S SECTION 21081 FINDINGS

■ Gold Mountain contends that the trial court was incorrect in its holding that the Board's findings with respect to the feasibility of mitigation measures or project alternatives were inadequate. When an EIR identifies that a proposed project will have a significant effect on the environment, Public Resources Code section 21081 mandates that the Board make findings that changes or alterations have been required which mitigate the significant effects, or that such changes are within the responsibility of another

agency and can be adopted by that agency, or that specific economic, social, or other considerations make the mitigation measures or project alternatives identified in the EIR infeasible.

The findings adopted by the Board in this case state that the Board "Certifies that the Environmental Impact Report was prepared in accordance with the guidelines of the California Environmental Quality Act and adopts the following statement of overriding considerations: Although this proposal will commit the site to development and may impact some rare plants and their habitat, the proposal will minimize these impacts as much as practical and will not be as disruptive to the environment of the site as alternative projects allowed in identical zone and General Plan designations. In addition, the social and economic needs outweigh those environmental impacts which cannot be mitigated. With the growth in population of Big Bear Valley (an increase of 42% from 1970 to 1980) there is a definite need for a cemetery. Since there are no public cemeteries within approximately 50 miles of the subject site, this need becomes more critical. A local mountain cemetery will reduce the amount of air pollution, energy consumption and traffic congestion generated by family and friends of the deceased as they drive downhill to the nearest public cemetery. The cemetery would also fulfill the social and emotional needs of those persons wishing to be laid to rest in the mountains, where many of them have spent their lives. . . .

"WHEREAS, this project has been determined to have significant adverse effects which cannot be mitigated; and

"WHEREAS, the Board of Supervisors finds this Project should go forward;

"WHEREAS, specific economic, social or other considerations make infeasible the mitigation measures or project alternatives identified in the final Environmental Impact Report."

The record discloses that discussion of the feasible alternative sites took place at the hearings. A site owned by the Forest Service of equal value was identified as available for a land exchange. Apparently the developer rejected this site because of added development costs and because the mortgage holder would not transfer the existing mortgage on the cemetery site.

Nowhere in the record are there any findings by the Board regarding this or any other alternative site. ■ The grounds upon which an administrative agency has acted must be " " "clearly disclosed and adequately sustained." " " (Topanga Association for a Scenic Community v. County of Los

*Angeles, supra,* 11 Cal.3d at p. 516.) ■ The Board is required by Public Resources Code section 21081 to identify project alternatives contained in the EIR as feasible or infeasible. Further, the Board must state *why* the alternative is infeasible. (*Village Laguna of Laguna Beach, Inc.* v. *Board of Supervisors* (1982) 134 Cal.App.3d 1022, 1034 [185 Cal.Rptr. 41].) ■ The Board in this case was required to make specific findings regarding the alternative site location mentioned in the EIR; the forest service property and any other property in the area which was not environmentally sensitive. The Board did not do so, therefore the trial court properly found that the Board's findings were legally inadequate.

#### FINDING OF CONSISTENCY WITH THE GENERAL PLAN

■ San Bernardino County Development Code section 84.0320(b)(3)(D) requires the Board to find that the proposed use of a site is consistent with the goals, policies and standards of the general plan. The findings adopted by the Board for the cemetery project read:

"The proposed use is consistent with the General Plan because although there are natural and cultural resources on the site, the potential impact of other uses currently permitted without approval are much more severe in nature."

Policy C4-a5 of the conservation element of the County's general plan requires protection of "beneficial, rare or endangered animals and plants with limited or specialized habitats." The record reveals that the County planning staff recommended denial on the basis of inconsistency with the plan:

"Staff states that because the project will have an adverse impact on biota and cultural resources which cannot be mitigated, it is therefore inconsistent with Policy C4-a5 of the General Plan which requires the protection of rare plants with specialized habitats. Thus, the proposal does not appear to be suitable for this location and staff must recommend denial of the project."

We conclude that the trial court correctly found the record does not contain substantial evidence to support the Board's consistency determination.

#### ATTORNEY'S FEES

The County and Gold Mountain contend that the trial court improperly awarded attorney's fees to Audubon under Code of Civil Procedure section 1021.5. Section 1021.5 provides that a court may award attorney's fees to

a successful party in any action which "has resulted in the enforcement of an important right affecting the public interest if . . . a significant benefit . . . has been conferred on the general public or a large class of persons. . . ."

■ The County asserts that because the Board was not found to have "totally disregarded" statutory requirements, Audubon has not enforced an important public right. County argues that cases in which attorney's fees have been awarded have involved significantly more serious failure to comply with applicable law than the trial court determined to have occurred in this case, and that the County did not act in bad faith.

However, litigation brought to enforce the provisions of CEQA and compliance with planning and zoning laws has been held to involve important rights affecting the public interest, and the private attorney general theory as codified in Code of Civil Procedure section 1021.5 applies to such suits. (*Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988, 994 [165 Cal.Rptr. 514].) Whether or not the County acted in good faith is irrelevant; Code of Civil Procedure section 1021.5 was intended to encourage public interest litigation by providing compensation to successful counsel. (See *Serrano* v. *Unruh* (1982) 32 Cal.3d 621 [186 Cal.Rptr. 754, 652 P.2d 985].)

The County also argues that its lack of compliance with the procedural requirements of CEQA was less egregious than other cases in which attorney's fees had been awarded. However, this court has recently stated that "we must be satisfied that the county has *fully complied* with CEQA because only in this way 'can subversion of the important public purposes of CEQA be avoided.'" (*Santiago County Water Dist.* v. *County of Orange, supra,* 118 Cal.App.3d at p. 823, citations omitted, italics added.) The trial court did not abuse its discretion in awarding attorney's fees to Audubon.

■ The County also contends that in any event, the trial court's award of attorney's fees was excessive because the trial court used hourly rates in excess of Audubon's counsel's standard billing rates to compute the amount of the award.

■ Whether parties have met their Code of Civil Procedure section 1021.5 requirements for the award of fees is within the sound discretion of the trial court. (*Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 559 [183 Cal.Rptr. 73, 645 P.2d 124].) Thus, the award will be reversed only if it is clearly wrong or has no reasonable basis. Further, because findings were not requested or prepared, we must infer all findings necessary to support

the judgment and refuse relief to the County if the findings are supported by substantial evidence. (*Environmental Law Fund, Inc.* v. *Town of Corte Madera, supra,* 49 Cal.App.3d at p. 119.)

 Calculation of attorney's fees under Code of Civil Procedure section 1021.5 is to be done in accordance with the guidelines set forth in *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321 [193 Cal.Rptr. 900, 667 P.2d 704]). The trial court is to first determine a "touchstone" or "lodestar" figure based on careful computation of the time spent and a reasonable hourly compensation. The figure may be increased or decreased by use of a multiplier after the trial court has considered other factors.[2]

 In this case Audubon requested hourly rates set at $110 and $90 for Audubon's two counsel. Although the evidence in the declarations indicated that counsel's standard billing rate for groups such as Audubon, which may have difficulty raising funds, was $85 and $75, there was also evidence that $90 and $110 were reasonable hourly rates for similar work in the community. The court is not limited to use of standard billing rates in setting reasonable hourly compensation under Code of Civil Procedure section 1021.5, rather the court is obliged to use the "market value" approach which is more likely to entice competent counsel to undertake difficult public interest cases. (*Margolin* v. *Regional Planning Com.* (1982) 134 Cal.App.3d 999, 1004 [185 Cal.Rptr. 145].)

 In this case Audubon figured the total lodestar amount to be $14,575, using a rate of $90 and $110. Then, taking into account the *Serrano* guidelines, suggested a multiplier of 1.5, requesting a total of $21,663 in attorney's fees. The trial court awarded $20,796.

The trial court's judgment is not supported by findings, so its calculations in arriving at the amount awarded are not evident. Because we find that the amount requested by Audubon was appropriate and the trial court's award is well within that amount, we find that the award of attorney's fees was not excessive.

---

[2]*Serrano* set forth a number of factors the trial court may consider in adjusting the lodestar figure. Among these factors were: "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that an award against the state would ultimately fall upon the taxpayers; (5) the fact that the attorneys in question received public and charitable funding for the purpose of bringing lawsuits of the character here involved; (6) the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed." (20 Cal.3d at p. 49.)

 Gold Mountain contends that the trial court erred in requiring it, as real party in interest, to share in paying the attorney's fees awarded to Audubon. Gold Mountain argues that the County is the entity which was found to have acted improperly; no action of Gold Mountain was at issue. Accordingly, such an award would have a chilling effect on individuals or business entities seeking to develop their property for fear of becoming financially liable because of a governmental agency's error.

However, Code of Civil Procedure section 1021.5 expressly states a court may "award attorneys' fees to a successful party against *one or more opposing parties*" (italics added). Further, California courts have viewed Code of Civil Procedure section 1021.5 as an affirmation of the private attorney general awards of fees formerly recognized in the federal realm, and thus have recognized federal authority, although no longer viable in the federal realm, to be reliable in interpreting this section. (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 934 [154 Cal.Rptr. 503, 593 P.2d 200].)

As noted in *Wilderness Society* v. *Morton* (D.C.Cir. 1974) 495 F.2d 1026, fees granted under the private attorney general theory are not intended to punish those who violate the law but rather to ensure that those who have acted to protect public interest will not be forced to shoulder the cost of litigation. In this case, Gold Mountain was a major party, actively litigating from the inception of the action in order to protect its interests. As the real party in interest, it had the most to gain. When a private party is a real party in interest and actively participates in litigation along with the governmental agency, it is fair for that party to bear half the fees. (*Id.*, at p. 1036.)

Contrary to Gold Mountain's arguments, rather than discourage meritorious development proposals, the possibility of liability for attorney's fees will encourage the developer to assist the governmental entity in complying with laws that are intended to insure public rights. A developer typically works with staff during the development review process, makes comments on the EIR, and often helps the agency prepare findings necessary to support its decision. Possible liability for an award of fees, as well as the possibility that project approval will be set aside, gives the developer added incentive to assist the agency to comply with the laws. Thus, attorney's fees are properly awarded against a private party in litigation seeking to set aside governmental decisions reached after the developer has made its initial application. Fees would not be properly awarded against the developer in litigation to set aside decisions made by the governmental agency prior to

the developer's involvement in the process, such as a suit to have a county's general plan declared legally inadequate.

 Code of Civil Procedure section 1021.5 allows a court to award fees to a successful party. Audubon did not prevail on its third cause of action regarding the adequacy of the County's general plan. Audubon requested $21,663 in attorney's fees. The court awarded $20,796. Although no findings were brought up from the trial court, it is presumed they support the judgment, and all intendments are in favor of the lower court's ruling. (*Environmental Law Fund, Inc.* v. *Town of Corte Madera, supra,* 49 Cal.App.3d at p. 119.) We therefore presume that the discrepancy between the amount requested by Audubon and the amount awarded by the court represents the amount the court attributed to the work done on the third cause of action, and that the court properly deducted that amount from the total award.

### DEMURRER

 In its cross-appeal, Audubon contends that the trial court improperly sustained the demurrer to the third cause of action without leave to amend. The third cause of action sought to have the County's general plan declared legally inadequate. Because the conservation element of the plan calls for preservation of resources and the project site was designated Res-4 (allowing four dwelling units per acre) on the land use map of the general plan, Audubon contends its cause of action is good under the state Planning and Zoning Law (Gov. Code, § 65000 et seq.) and *Sierra Club* v. *Board of Supervisors* (1981) 126 Cal.App.3d 698 [179 Cal.Rptr. 261].

Pursuant to section 65300 et seq. of the Government Code, the County is required to adopt and act consistently with a legally adequate general plan for the development of the County. The plan is to contain a land use element, a conservation element and an open space element. These elements must comprise an integrated, internally consistent statement of policies. Audubon contended that the County's plan was inadequate because the cemetery site and other parcels containing specialized habitat areas were designated for residential use which would be inconsistent with the conservation element. In *Sierra Club* Kern County had adopted an open space conservation element and a land use element and corresponding maps. The developer sought a zoning change from agricultural to mobile-home, suburban and residential. The change was consistent with the map of the land use element but not the map of open space conservation element. The county utilized a clause in the general plan which allowed the land use element to take precedence. Apparently, the plan could then allow building in an open

space conservation element. The court found that the plan was thus inconsistent.

Audubon has not alleged facts which establish the County's plan is inconsistent. The existence of a land use designation for a particular area does not demonstrate any inconsistency with the policies of protection of natural resources even if it turns out that a protectable resource does exist on the property. It may be possible to protect resources by conditional development. Nothing on the face of the plan indicates that the elements cannot be harmonized, as did the precedence clause in the Kern County plan which relegated the open space consideration element to inferior status.

Audubon has not demonstrated any inconsistency within the general plan itself, but rather that the proposed use of this particular site is inconsistent with the general plan. These are, in essence, the same facts pleaded in the second cause of action for mandamus. Therefore, the trial court properly sustained the demurrer to the third cause of action.

The judgment is affirmed.

Kaufman, J., and McDaniel, J., concurred.