Filed 2/19/20; Certified for Publication 3/12/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CANYON CREST CONSERVANCY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>Defendants and Respondents;<br><br>STEPHEN KUHN,<br><br>Real Party in Interest. | B290379<br><br>(Los Angeles County<br>Super. Ct. No. BS167311) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Mary Strobel, Judge. Affirmed.

Mitchell M. Tsai for Plaintiff and Appellant.

Mary C. Wickham, Assistant County Counsel, Jeanette Cauble and David Michael Miller, Deputy County Counsels for Defendants and Respondents.

California State Association of Counties, Jennifer B. Henning as Amicus Curiae on behalf of Defendants and Respondents.

Stephen Kuhn, in pro. per, for Real Party in Interest.

# INTRODUCTION

Real party in interest Stephen Kuhn sought to build a single-family residence on his undeveloped property in Los Angeles County (the county). Because the property was located on a steep hillside and construction would require the removal of a protected coastal oak tree, Kuhn obtained a minor conditional use permit and an oak tree permit from the county. Appellant Canyon Crest Conservancy, a nonprofit organization established by two of Kuhn's immediate neighbors, appealed the permit approvals to the county Regional Planning Commission and then to the Los Angeles County Board of Supervisors (the board). After the project approvals were upheld, appellant filed the instant lawsuit against respondents the county, the board, and the county Department of Regional Planning (Regional Planning), alleging violations of the California Environmental Quality Act (CEQA) (Public Resources Code, section 21000, et seq.).

The trial court granted appellant's motion for an administrative stay of the permit approvals in order to preserve the status quo pending an adjudication on the merits of appellant's claims. Thereafter, Kuhn, who has appeared in propria persona at all times below and on appeal, requested that the county vacate the permit approvals, stating that he could not afford to continue the litigation. The county complied and appellant dismissed this case.

Appellant filed a motion for attorney fees under the private attorney general doctrine pursuant to Code of Civil Procedure section 1021.5.[1] The trial court denied the motion, concluding that appellant failed to establish any of the requirements for a right to fees under the statute. On appeal, appellant contends these findings were in error. We find no abuse of discretion in the trial court's findings and therefore affirm the judgment.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

**FACTUAL AND PROCEDURAL HISTORY**

I. *Background*

    A. *The Project*

Kuhn[2] owns the property at issue, an undeveloped 1.04 acre parcel on Canyon Crest Road in the unincorporated community of Altadena in Los Angeles County. The property is in an area zoned for single-family residences, located on a steep hillside bisected by a stream. The property is surrounded by other single-family residences and vacant land; the surrounding area is abundant with oak woodland.

Kuhn proposed to construct a single-family residence with an attached garage on the property.[3] In 2014, Kuhn applied for a minor conditional use permit, in order to build on the hillside, and an oak tree permit, required because the project would require removal of one oak tree and would encroach upon nine others. The proposed residence would have 1,436 square feet of habitable space and would rise two stories above grade, with a maximum elevation of 25 feet at street level, and the remainder of the living space descending the hillside.[4]

At Kuhn's request, arborist Scott McAllaster prepared an oak tree report in August 2014 assessing the project's impact on the property's oak trees. The report stated that the proposed construction would require removal of one oak tree, and would result in temporary or permanent

---

[2] Although it appears from the record that Kuhn's wife was involved in the planning and permitting process, she has not appeared in this case. Thus we refer to the project and the property as belonging to Kuhn merely as a reflection of his identification as the real party in interest.

[3] We note that in briefing on appeal, appellant refers to Kuhn as "The Developer." To the extent appellant is suggesting Kuhn was acting as a real estate developer rather than a homeowner, appellant cites to no evidence in the record to support that contention. Indeed, Kuhn consistently stated below that he and his wife intended the home as their "dream home," planned as a "modest, net-zero home . . . within walking distance of our workplace."

[4] Some documents in the record list the square footage as 1,699 square feet, which appears to include the square footage of a proposed loft storage space above the garage. Appellant also describes the height of the home as four stories rather than two.

encroachment into the protected zone of eight other oak trees. The report prescribed measures that would limit the effects of construction on the roots and canopy of the trees, and called for replacement planting of any trees lost at a two-to-one ratio.

In October 2015, Kuhn presented the project to the Altadena Town Council, which recommended approval with an added condition regarding construction staging and vehicle parking. Kuhn also established a project website and held several informal meetings on his property to answer questions and solicit feedback from his neighbors.

B.    *Initial Study and Negative Declaration*

The county Department of Public Works and Fire Department recommended approval of the project. Regional Planning determined that the project qualified for a categorical exemption under CEQA Guidelines section 15303,[5] but decided to prepare an initial study to assess possible environmental impacts and allow other local and state agencies to assess and comment on the project. Regional Planning stated that its decision to conduct the initial study "was not based on a conclusion that 'unusual circumstances' as referenced in CEQA Guidelines section 15300.2(c) exists because, in part, the Project would not lead to any impacts different from the development on neighboring properties."

---

[5] "To achieve its objectives of environmental protection, CEQA has a three-tiered structure." (*Committee to Save the Hollywoodland Specific Plan v. City of Los Angeles* (2008) 161 Cal.App.4th 1168, 1185, citing CEQA Guidelines, § 15002(k).) "First, if a project falls into an exempt category, or 'it can be seen with certainty that the activity in question will not have a significant effect on the environment, [citation] no further agency evaluation is required.' [Citation.] Second, if there is a possibility the project will have a significant effect on the environment, the agency must undertake an initial threshold study; if that study indicates that the project will not have a significant effect, the agency may issue a negative declaration. Finally, if the project will have a significant effect on the environment, an Environmental Impact Report (EIR) is required." (*Id.* at pp. 1185-1186.) Projects that are categorically exempt include a single-family residence constructed in a residential zone. (Cal. Code Regs., tit. 14, § 15303(a).)

4

In the initial study, the department found that the project was located "at the edge of a disturbed woodland community" with "[d]isturbances related to road construction and dumping." The study concluded that Kuhn's compliance "with the conditions of the oak tree permit, through the planting of replacement oaks on site in appropriate habitat areas will ensure that impacts to oak woodlands are less than significant." Based on the study, Regional Planning determined in February 2016 that a negative declaration was appropriate because there was no substantial evidence that the project would result in a significant impact on the environment.

C.     *Objections and Appellant's Formation*

In August 2015, John and Michiko Lynch, who lived next to the project site, submitted a letter to Regional Planning. The Lynches objected to the proposed project on a number of grounds, including construction access issues, the steep incline of the lot, the design of the structure, and that Kuhn's home would affect their views and privacy. The letter noted that the "views of the canyon and trees are the primary factor that drives property values in our neighborhood." The Lynches also stated that they and prior occupants had used the flat area of Kuhn's property next to the street for "storage and off street parking" continuously for over 65 years, and that they would have nowhere to park if the project was approved, which would be "a great burden to us and make our home difficult to rent or sell in the future." The same month, Randall Baer and Wendy Wilson sent a letter to Regional Planning as the owners of the property opposite the project. Baer and Wilson objected that the project would "significantly block our light and view of the canyon that we treasure and enjoy." Baer sent another letter to Regional Planning in April 2016, noting that the primary concerns of the neighbors were "the potential impacts to the oak canopy, the mass of the structure and the loss of light, views and privacy to the adjacent neighbors."

In March 2016, attorney Mitchell Tsai requested records on the project on behalf of John Lynch. Later that month, Tsai began sending letters to Regional Planning on behalf of appellant, objecting to the project.

Appellant was incorporated on May 9, 2016, with Baer's residence listed as the address of record. Baer served as the president for appellant and John Lynch was the vice president and secretary. Appellant identified

5

itself as a "California nonprofit public benefit corporation dedicated to 1) protecting open space, 2) ensuring that natural preservation areas are protected and enhanced, 3) ensuring a high quality of life in the Canyon Crest area by remaining consistent with its natural character, and 4) carrying on other charitable and educational activities associated with this goal."

Appellant retained an opinion by a certified arborist, Rebecca Latta, that the impacts were understated; specifically, that the oak tree designated for removal was owned by the Lynches, at a value of $103,000. Further, Latta opined that encroachments on three other trees might impact their health and ultimately require their removal.

D. *Approval of the project*

Regional Planning conducted a hearing on the application on April 5, 2016. Both Baer and John Lynch spoke at the hearing in opposition to the project. Baer argued that the property "should be considered unbuildable." John Lynch argued that the proposed project was "detrimental to the use and enjoyment of my property," and would likely force him to sell his property for "lower than its current market value. Life at 3589 Canyon Crest will never be the same again. If this project [a]s proposed did not violate our personal space and the rights of our neighbors, we would not have spent so much waking hours [*sic*] and sleepless nights opposing it." Latta also gave her opinion on inadequacies in the initial oak tree report.

The hearing was continued to April 19, 2016, to allow Kuhn's arborist to respond to concerns raised by Latta, and Kuhn to meet with interested members of the public to discuss possible design alternatives. In a letter submitted to Regional Planning, McAllaster, the arborist who prepared the initial oak tree report, noted that certain details to the site plan had changed since his initial review in 2014. Therefore, he opined that his 2014 report "may have underestimated the impacts" to two of the trees. However, he concluded that the dispositions from the original report were unchanged and that he found the trees had a "good probability" of survival. He also noted his support for Kuhn's attempt to design the project to reduce the number of trees that would be removed.

6

Regional Planning held the second day of public hearings on April 19, 2016, at which both Baer and John Lynch again opposed the project. A spokesperson for Regional Planning stated that Kuhn had met with community members and agreed to lower the height of the home's street-facing frontage. A biologist from Regional Planning opined that the permit conditions were sufficient to allow recovery from any losses to trees and woodland, given the "highly disturbed existing state of the affected woodland." The county hearing officer found the conditions for the permits sufficiently mitigated against possible impacts, and therefore adopted the negative declaration and approved the permits.

Appellant appealed the approval to the county's Regional Planning Commission. On September 7, 2016, the commission held a public hearing and approved the application. As a condition, Kuhn was required to replace any removed or deceased oak trees at a two-to-one ratio and provide follow up monitoring for seven years to ensure the health of the remaining trees.

Appellant appealed to the board. On November 22, 2016 and December 6, 2016, the board held public hearings on the project and subsequently approved the application.[6] After the hearing, the board directed county counsel to prepare the necessary findings and conditions of approval for the project. The board adopted these findings and issued its final approval of the project on March 21, 2017.

## II.  *Petition*

In January 2017, appellant filed a verified petition for writ of mandate and complaint for declaratory and injunctive relief against respondents. Appellant alleged that respondents violated CEQA, the Los Angeles county oak tree ordinance, the California Oak Woodlands Conservation Act (the Act), the Oak Woodlands Conservation Management Plan (the Plan), and the county's zoning ordinance. Appellant sought a writ of mandate requiring respondents to vacate and withdraw the certification of the initial study and any approvals of the project, and to complete "the CEQA environmental

---

[6] At the conclusion of the first hearing, the board continued the hearing to allow for the review of a safety concern regarding whether construction work would obstruct Canyon Crest Road.

7

review and public comment period as required by law." Appellants also prayed for a temporary stay, temporary restraining order, preliminary and permanent injunction enjoining respondents and Kuhn "from taking any action to implement the project, unless and until Respondent fully complies with CEQA," and a declaratory judgment that the county violated CEQA. Appellant also sought attorney fees pursuant to section 1021.5.

In February 2017, the parties stipulated to stay the litigation until March 20, 2017, noting that at the time appellant filed the petition, the county had not issued a final approval of the project and therefore the case was not yet at issue. The court ordered the stay. Subsequently, appellant filed a first amended petition and complaint on April 17, 2017, adding an allegation that the board approved the project on March 21, 2017.

Appellant served notice of the petition on the Attorney General on January 18, 2017. It did not serve the Attorney General with the amended petition.

## III. *Administrative Stay*

Appellant moved for a preliminary injunction or administrative stay on April 17, 2017. Appellant argued that a stay under section 1094.5 would not be against the public interest, as it would "preserve the status quo" and protect appellant's "right to a meaningful trial court resolution." Alternatively, it asked the court to issue a preliminary injunction, arguing that there was a reasonable probability that appellant would prevail on the merits of its claims.

Following a May 9, 2017 hearing on the motion, the court granted the administrative stay, finding that granting a stay would not be against the public interest, as the "oak woodland and natural interests identified by [appellant] could be irreparably harmed if the approval of the project is not stayed." Although it was not required to make any additional findings in order to grant the stay, the court also stated appellant had "shown a reasonable probability of succeeding on its claim that Latta's opinion is substantial evidence supporting a fair argument that the Project would have a significant impact on the oak woodland in which the Project site is located." However, during the hearing, the court cautioned the parties that "this is in no way a determination on the writ. It is my determination based on what I

8

have at this point in time and whether a stay is in the public interest. I am finding that it is." The court conditioned the stay on appellant's filing a bond of $7,500.

On December 14, 2017, Kuhn sent a letter to the county requesting that the county vacate the project approvals. In his letter, Kuhn stated he was making this request "to end the litigation." Regional Planning recommended that the board vacate the permit entitlements based on Kuhn's request. However, the department also noted that it agreed with Kuhn that "a comprehensive EIR is not normally required for a single-family residence on a vacant lot; and none of the extenuating circumstances for an exception to exemptions exists here."

The board held a hearing on February 27, 2018. The representative for Regional Planning recommended that the board vacate the project approvals, but stated that "the application will remain on file, and if the applicant wishes to pursue the application, it will be processed in accordance with all relevant regulations." Kuhn stated that he could not afford to continue to pay for the litigation. One of the supervisors expressed her disappointment that Kuhn, who had lawfully met every requirement, would be unable to build because appellant had "abused the C.E.Q.A. process as it relates to this project." The board approved the request.

Appellant filed a request to dismiss the case on April 2, 2018. The court dismissed the case without prejudice the same day.

## IV. *Motion for Attorney Fees*

On March 15, 2018, appellant filed a motion for attorney fees pursuant to section 1021.5, seeking a total award of $289,544. Respondents and Kuhn opposed the motion, arguing that appellant did not satisfy the statutory requirements for fees under section 1021.5.

The court held a hearing on the motion on April 17, 2018. At the conclusion of the hearing, the court issued a 25 page written ruling denying the motion. The court found that appellant had failed to establish any of the

9

required prongs under section 1021.5.  We discuss the court's pertinent findings further below.  Appellant timely appealed.[7]

## DISCUSSION

Appellant contends the trial court erred in declining to award attorney fees pursuant to section 1021.5, as its litigation efforts "resulted in the enforcement of an important right affecting the public interest by enforcing CEQA's procedural requirement that a public agency prepare a full environmental impact report . . . when there is substantial evidence of a fair argument that a project may result in significant environmental impacts." We conclude that appellant has failed to meet its burden to establish at least several of the requirements under section 1021.5, and therefore it has not shown error on appeal.

### I.    *Legal Principles*

Section 1021.5 provides, in relevant part, "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."  (§ 1021.5.)  The statute "codifies the private attorney general doctrine and acts as an incentive to pursue 'public-interest litigation that might otherwise have been too costly to bring.'" (*Hall v. Department of Motor Vehicles* (2018) 26 Cal.App.5th 182, 188.)  To obtain fees, the moving party must establish "(1) he or she is a 'successful party,' (2) the action has resulted in the enforcement of an important right affecting the public interest, (3) the action has conferred a significant benefit on the public or a large class of persons, and (4) an attorney fees award is appropriate in light of the necessity and financial burden of private enforcement." (*Ibid.*)

---

[7] An order on a statutory attorney fee motion is separately appealable as a collateral matter.  (See *Serrano v. Unruh* (1982) 32 Cal.3d 621, 636-637; *Henneberque v. City of Culver City* (1985) 172 Cal.App.3d 837, 842.)

"We review an attorney fee award under section 1021.5 generally for abuse of discretion.  Whether the statutory requirements have been satisfied so as to justify a fee award is a question committed to the sound discretion of the trial court, unless the question turns on statutory construction, which we review de novo."  (*Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 152.)  Under the abuse of discretion standard, we presume the trial court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise.  (*Ibid.*)

Appellant contends that the second and third statutory requirements—whether an action enforced an important right and conveyed a significant benefit—should be reviewed de novo, citing *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1.  That case is inapplicable.  There, the plaintiff secured a writ of mandate, resulting in a published opinion on appeal.  In the subsequent appeal from the denial of attorney fees under section 1021.5, the court held that "when the successful legal action resulted in a published appellate opinion," the appellate court "is in at least as good a position as the trial court to judge whether the legal right enforced through its own opinion is 'important' and 'protects the public interest' and whether the existence of that opinion confers a 'significant benefit on the general public or a large class of persons.'"  (*Id.* at pp. 5, 8.)  Conversely, where, as here, "the trial court is considering a court awarded fee where the litigation began *and ended* at the trial level," the trial court "may well be in a better position than the appellate court to assess" those requirements; thus, "the appellate court owes the trial court a full measure of deference in deciding whether the trial court abused its discretion."  (*Id.* at pp. 7-8.)

Moreover, any suggestion that the de novo standard of review would apply to these prongs in the absence of a published appellate opinion was subsequently quashed by our Supreme Court.  (See *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 578 [holding, in review of public interest prongs of section 1021.5, that "[w]e will uphold the trial court's decision to award attorney fees under section 1021.5, unless the court has abused its discretion"]; see also *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 938 (*Woodland Hills*) [directing trial court

11

to utilize its discretion to determine whether or not the action served to vindicate an important right].)

## II. *Analysis*

### A. *Enforcement of an Important Right Affecting the Public Interest*

Appellant contends it sufficiently showed that its lawsuit alleging CEQA violations resulted in the enforcement of an important right affecting the public interest, thus meeting the requirement for attorney fees under section 1021.5. The trial court found otherwise, and we find no abuse of discretion in that determination.

This prong of section 1021.5 requires a determination of "the 'strength' or 'societal importance' of the right involved." (*Woodland Hills, supra*, 23 Cal.3d at p. 935.) "That right may be constitutional or statutory, but it must be "'an important right affecting the public interest'"—it 'cannot involve trivial or peripheral public policies.' Where, as here, the right vindicated is conferred by statute, 'courts should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals.'" (*Roybal v. Governing Bd. of Salinas City Elementary School Dist.* (2008) 159 Cal.App.4th 1143, 1148, quoting *Woodland Hills, supra*, 23 Cal.3d at p. 936.)

Respondents do not dispute that, as a general matter, litigation alleging CEQA violations can involve important rights affecting the public interest. (See, e.g., See *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738, 754 (*San Bernardino*); *Schwartz v. City of Rosemead* (1984) 155 Cal.App.3d 547, 558.) Respondents argue, however, that appellant did not vindicate any such important rights through this litigation.

The trial court agreed, concluding that while appellant "enforced the stay provisions of CCP section 1094.5(g), and ensured that the Project was not built until after an adjudication of its CEQA claims at trial," appellant did not "obtain or secure any additional environmental review in this action." The court also rejected appellant's argument that it obtained a favorable ruling on the merits regarding respondents' violations of CEQA, finding that appellant "overstates the scope" of the administrative stay. The court noted that it granted the stay based on a finding that it would not be against the

public interest, and expressly stated it was not making a determination on the merits of the writ.

Appellant contends the trial court erroneously required it to actually "obtain or secure additional environmental review" in order to establish vindication of an important right under section 1021.5. The trial court imposed no such requirement; rather, it cited the fact that appellant did not secure any additional environmental review of the project as evidence supporting its conclusion that the litigation did not enforce any important rights and the stay merely preserved the status quo pending trial.

Appellant also asserts it was successful "in ensuring that the project was not built without adequate CEQA review," and that such success was "sufficient to satisfy the 'important' right requirement." The court was within its discretion to conclude otherwise, based on the lack of evidence that respondents would conduct any additional review or change their approach should Kuhn reapply for the project. In fact, all indications from respondents during the underlying proceedings and ensuing litigation suggested that the county felt Kuhn and respondents had acted properly in proposing and assessing the project and were not persuaded otherwise by appellant's arguments or Latta's opinion. There was no evidence to suggest respondents would make any changes in reviewing proposals for this project, or future similar projects. Unlike this case, appellant's cited authority exemplifies situations where the plaintiff obtained the enforcement sought. (See *San Bernardino, supra,* 155 Cal.App.3d at p.754 [no abuse of discretion to award fees where court granted plaintiff's writ of mandamus and ordered county to set aside findings]; *Schwartz v. City of Rosemead, supra,* 155 Cal.App.3d at p. 558 [plaintiff compelled enforcement of important right by obtaining writ of mandate requiring the city to conduct environmental assessment and provide adequate notice to community].)

In addition, appellant claims that a resolution on the merits was not necessary, citing cases allowing fees after resolution at an early stage of litigation. These cases do not aid appellant. For example, in *Rich v. City of Benicia* (1979) 98 Cal.App.3d 428, 431 (*Rich*), the plaintiff sued to compel preparation of an EIR for the conversion of a single-family residence to commercial and multiple residence purposes. (*Ibid*.) "After preliminary

13

proceedings, but before the trial court had ruled on Rich's applications for a writ of mandate and for a preliminary injunction, the parties entered into a stipulation that [the city] would prepare an environmental impact report in accordance with specified procedures." (*Ibid.*) Under those circumstances, the appellate court found no abuse of discretion in the trial court's determination that the lawsuit resulted in enforcement of an important right. (*Id.* at p. 436.) Thus, although the trial court did not make a determination on the merits, the plaintiff obtained vindication of the right he sought—an agreement by the city to prepare an EIR in compliance with CEQA. Here, by contrast, appellant obtained no similar result.

Appellant's suggestion that bringing a "viable CEQA claim" alone is sufficient to satisfy this prong is unsupported by any authority and ignores the statutory requirement that a party not only *allege* an important right but actually *vindicate* that right by way of the litigation. As the court reasoned in *Woodland Hills, supra*, 23 Cal.3d at p. 938: "the fact that a plaintiff is able to win his case on a 'preliminary' issue, thereby obviating the adjudication of a theoretically more 'important' right, should not necessarily foreclose the plaintiff from obtaining attorney fees under a statutory provision. . . . On the other hand, of course, the fact that a plaintiff prevails on a 'technical' preliminary issue does not necessarily demonstrate that his additional claims have sufficient merit to warrant the conclusion that the action served to vindicate an important right. Under such circumstances, the trial court, utilizing its traditional equitable discretion (now codified in § 1021.5), must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory." Here, appellant has not demonstrated any abuse of discretion in the trial court's practical assessment that the litigation did not serve to vindicate any of the rights under CEQA that appellant alleged were violated.

B.    *Significant Benefit on the General Public*

Section 1021.5 also requires a plaintiff to establish that the litigation conferred a "significant benefit, whether pecuniary or nonpecuniary . . . on the general public or a large class of persons." Appellant contends it did so by requiring the county to reconsider the proposed project under CEQA, thereby

enforcing important legislative policy and benefitting the public.  We disagree.

A significant benefit may result from the "effectuation of a fundamental constitutional or statutory policy." (*Woodland Hills, supra*, 23 Cal.3d at p. 939.)  "Of course, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified." (*Ibid.*)  However, not "every case involving a statutory violation" is properly the subject of fees under the statute.  Instead, the trial court must "determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Id.* at pp. 939–940.)  Thus, significant benefit and important right requirements "dovetail" to some extent. (*La Mirada Ave. Neighborhood Assn. Of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1158.)

The trial court again rejected appellant's assertion that the granting of an administrative stay resulted in a benefit to the general public.  The court found that the ruling on the stay was "not an adjudication on the merits" and there was no evidence to suggest that "this action will have caused Respondent to reconsider its CEQA review," or to change its position regarding the impact to the oak woodlands.  The court noted statements by various residents that they "believe[d]" the action would cause the county to give more serious consideration to their concerns about the project and private development, but found these statements "speculative and unsubstantiated."  The court also found that based on the limited project— development of a less than 1500-square-foot single family home on one lot— appellant had not shown that the lawsuit conferred a benefit on the general public or a large class of persons.

We agree with the trial court that appellant failed to establish that this action conferred a significant benefit on the general public.  Although appellant raised a number of challenges to the environmental analysis of the project conducted by respondents, the lawsuit was dismissed without any agreement by respondents that they would reconsider the project in a different manner, or any order requiring them to do so.  Respondents

15

maintained that Kuhn could reapply for the project if he chose to and then respondents would proceed as they believed proper. Nor did respondents acknowledge any change in how they would approach similar projects in the future. Instead, both Kuhn's arborist and respondents' experts maintained that the project as approved would not create a significant impact on the environment, and disagreed with the concerns raised by Latta. As such, respondents' cited cases are inapposite, as each involves a change made by the public entity as a result of the lawsuit. (See *Kern River Public Access Comm. v. City of Bakersfield* (1985) 170 Cal.App.3d 1205, 1213-1214 [requiring city to rescind approval of subdivision maps]; *San Bernardino , supra,* 155 Cal.App.3d 738, 747 [ordering county to set aside approval]; *Rich, supra*, 98 Cal.App.3d at p. 431 [city agreed in settlement to prepare EIR].) Moreover, Baer and the Lynches, as the creators and officers of appellant, admitted that their concern was the effect of the project on their personal property and, for the Lynches, on their ability to use Kuhn's property for parking.

Appellant also argues that a significant benefit "can be derived from creating an opportunity for members of the public to provide input." But there is no evidence to establish that this lawsuit provided additional opportunities for public input. The record is replete with statements made by the public, both in support of and in opposition to the project, during the permit approval process, including letters and opportunities to speak at multiple hearings. Appellant does not show how this lawsuit created any additional opportunities for input that were lacking, particularly where the lawsuit was dismissed and Kuhn ceased pursuing the project. As such, we find no error in the trial court's finding that appellant failed to meet its burden to establish an entitlement to attorney fees under section 1021.5.[8]

---

[8] Because we conclude that appellant has not met its burden to establish error in the trial court's findings of lack of an important right affecting the public interest and significant benefit on the general public, we need not reach the parties' contentions regarding the remaining prongs under section 1021.5.

## DISPOSITION

The judgment and order of the trial court are affirmed.  Respondents are awarded their costs on appeal.


COLLINS, J.

We concur:


MANELLA, P.J.


CURREY, J.

17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| CANYON CREST CONSERVANCY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>    Defendants and Respondents;<br><br>STEPHEN KUHN,<br><br>    Real Party in Interest. | B290379<br><br>(Los Angeles County<br>Super. Ct. No. BS167311)<br><br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT\*

The opinion in the above-entitled matter filed on February 19, 2020 was not certified for publication in the Official Reports. Upon application of the California Building Industry Association (CBIA) an interested party, and for good cause appearing, it is

ordered that the opinion shall be published in the Official Reports.

Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication.

_____

\*MANELLA, P.J.   COLLINS, J.   CURREY, J.